# OCTOBER, 1932

## EX PARTE L. G. PHARES, CHIEF OF TEXAS HIGHWAY PATROL, ET AL.

No. 6323. Decided October 1, 1932.
(53 S. W., 2d Series, 297.)

*James V. Allred,* Attorney General, *T. S. Christopher, Neal Powers* and *Elbert Hooper,* Assistants Attorney General, for relators.

*Swartzberg & Rawlins,* of Fort Worth, *W. H. Lipscomb* and *C. H. Tupper, Jr.,* both of San Angelo, and *J. S. Callicutt,* of Corsicana, for respondents.

MR. JUDGE LEDDY of the Commission of Appeals delivered the opinion for the court.

We take the following from relators' brief as a correct statement of the material facts upon which this proceeding is based:

"On July 1st, 1932, R. L. Dunn and D. F. Dunn, residents of Odessa, Crane County, Texas, presented a bill in equity to the Honorable Joe G. Montague, Judge of the 112th Judicial District of Upton County, Texas. Petitioners complained of W. C. Fowler as Sheriff of Upton County, Will Rooney as Sheriff of Pecos County, L. G. Phares, as Chief of the Highway Patrol, Hubert Forman, County Attorney of Upton County, and of all weight and license inspectors, each and every highway patrolman, all sheriffs and constables and their deputies, all county highway officers, and all county attorneys in the State of Texas without naming any of them.

"In substance, the bill alleged that petitioners were engaged in the business of hauling oil field equipment for hire over the public highways of Texas; that they were operating under a special commodity permit issued to them by the Railroad Commission of Texas; that they had spent many thousands of dollars equipping themselves with trucks to carry on such business; that prior to the passage of Chapter 282, Acts of the Forty-Second Legislature, they were earning a reasonable profit upon their investment, and that if they are required to limit their net loads to 7,000 pounds they cannot operate at a profit and their property will be of little value.

"The bill further calls attention to Section 5 of the act limiting the net load to 7,000 pounds, and then to Section 7 per-

mitting a maximum net load of 14,000 pounds from points of origin to common carrier stations, and vice versa, by the nearest practicable route. Petitioners assert they are entitled to operate under the classification provided by Section 7 and, therefore, are entitled to carry 14,000 pounds because there are no common carrier receiving or unloading points equipped to transport the commodities they handle.

"Petitioners plead, in the alternative, however, that should the court hold they are not entitled to carry 14,000 pounds in their operation then, in that event, they assert that Section 5, limiting the load to 7,000 pounds, is invalid because it is discriminatory and contravenes Section 1 of Article III of the Texas Constitution.

"On August 5, 1932 the Red Arrow Freight Lines, Inc., a Texas corporation, with the court's permission, filed a bill of intervention in said cause and interplead, as additional defendants, the sheriffs and county attorneys of the counties of Bexar, Kenedy, Kleberg, Harris, Willacy, Fort Bend, Wharton, Colorado, Fayette, Jackson, Victoria, Goliad, Bee, San Patricio, Wilson, Karnes, Jim Wells, Brooks, Hidalgo, Gonzales, Caldwell, and Guadalupe, none of which said counties are embraced within the 112th Judicial District of Texas.

"It is shown and alleged in said bill of intervention that intervenor's operations are confined exclusively within the limits of said counties.

"Intervenor adopted the allegations set out in petitioners original bill and alleged that it operated as a common carrier for hire under a certificate of convenience and necessity issued by the Railroad Commission of Texas; that it operated on regular schedules and over fixed routes.

"Upon intervenor's prayer it was granted a temporary injunction against the original and interplead defendants restraining them from arresting, detaining or prosecuting its agents, servants or employees for transporting a net load in excess of 7,000 pounds and not exceeding 14,000 pounds regardless of the origin or destination of any load, and regardless of the limitations imposed by law.

"This order was issued without notice or hearing and was not made returnable until February 6, 1933, six months and one day after its issuance. The injunction in the original bill was issued only one day before the end of the term of court then in session.

"On September 7, 1930, on motion of intervenor, Red Arrow Freight Lines, Inc., the relators were ordered by the court

to appear before him at Rankin, Texas, on September 14, 1932, and show cause why they should not be punished and imprisoned for an alleged contempt in arresting and detaining one of intervenor's drivers for transporting a net load in excess of 7,000 pounds over the public highways of Harris County.

\* \* \* \* \* \* \*

"Upon hearing had on September 14, 1932, the District Judge adjudged the relators in contempt and ordered that they be committed to the jail of Upton County without bail.

"On the 16th day of September, 1932, the relators were detained and arrested by the Sheriff of Travis County upon the judgment of contempt. The Chief Justice of the Supreme Court, on the same day, granted their applications for writ of habeas corpus and ordered their release upon bond conditioned for their appearance before this Court on the 19th day of September, 1932."

The facts of this case differ in but one material respect from those in Ex parte W. W. Sterling et al., this day decided. 122 Texas, 108, 53 S. W. (2d) 294. In the petitions upon which the injunctions were issued complainants asserted that they are entitled to operate under the classification provided by Section 7 (Sec. 5b) of the Motor Vehicle Act, being Chapter 282, 42d Legislature; and therefore are entitled to carry 14,000 pound loads on the routes over which they operate because there are no common carrier receiving and unloading points equipped to transport the commodities they handle. The effect of complainants' averment in this respect is that they are threatened by relators with criminal prosecution for acts which do not in fact constitute a violation of said law.

Assuming these allegations to be true, still there is no basis for the interposition of a court of equity. The power and authority to interpret this act rest exclusively with the courts of this State exercising criminal jurisdiction. A court of equity will not, through the medium of an injunction, determine whether given acts violate the provisions of a criminal statute. Such construction can be had only in due and orderly enforcement of the statute through the forum prescribed for the trial of criminal cases. Le Court v. Gaster, 49 La. Ann., 487, 21 So., 646; Davis v. American Soc., 75 N. Y., 362; Los Angeles Title Ins. Co. v. Los Angeles, 52 Calif. App., 152, 198 Pac., 1001; Poyer v. Des Plaines, 123 Ill., 111, 13 N. E., 819.

All other questions involved in this case have been disposed of in favor of relators by the opinion of this court in Ex parte W. W. Sterling et al., supra. For the reasons there given the

injunctions and all proceedings had thereunder are void. It is ordered that relators be discharged.

The foregoing opinion is adopted as the opinion of the Supreme Court, and relators ordered discharged.

C. M. CURETON, Chief Justice.