## TEXPORT CARRIER CORPORATION v. SMITH et al.
### No. 473.

District Court, S. D. Texas, Austin Division. Aug. 27, 1934.

Renfro & McCombs and Wm. Andress, Jr., all of Dallas, Tex., for complainant.

James V. Allred, Atty. Gen., and T. S. Christopher, Asst. Atty. Gen., for respondents.

Before HUTCHESON, Circuit Judge, and KENNERLY and McMILLAN, District Judges.

HUTCHESON, Circuit Judge.

This is a final hearing before a three-judge court on an application for injunction; an interlocutory application having been made, pressed, and denied.

Plaintiff is a Texas corporation, a subsidiary of J. Kahn & Co., cotton factors of Dallas, Tex., created to carry Kahn's cotton to port, and on the back haul products for two other Dallas concerns. Defendants are members of the Railroad Commission of Texas, the Governor, and the Attorney General of Texas. The suit was for an injunction to prevent defendants from interfering with or preventing plaintiff from engaging in such business, and from arresting their drivers and prosecuting them for doing so. It was alleged that plaintiff had filed its application with the Commission for a permit as a contract motor carrier hauling interstate, to operate two hundred trucks, forty-eight described, over 1,577 miles of state highway described in the application, including Federal Highway No. 75, which is State Highways Nos. 19, 32, and 14, from Dallas to Houston, Tex. It was also alleged that the Commission, upon the grounds stated in the order attached to the bill, that considerations of traffic safety and convenience required its refusal, had denied the permit. It was further alleged that this denial was unreasonable and arbitrary, and without authority of law, because, in violation of the commerce clause of the Federal Constitution (article 1, § 8, cl. 3), it placed a direct burden on interstate commerce by preventing plaintiff from engaging in it without any adequate police reason for doing so. It was further alleged that in violation of the Fourteenth Amendment and of the commerce clause the Commission had discriminated against plaintiff by allowing other permits to persons similarly situated, except that some of these persons were hauling intrastate and plaintiff was hauling interstate.

The defendants, admitting that the permit had been refused on the grounds stated in the order, and affirming that those grounds were sound and valid and supported by the facts, denied that the Commission had arbitrarily interfered with interstate commerce, or had discriminated against it or plaintiff. On the trial of the case the issue was joined as it had been before the Commission, on Highway No. 75; it being conceded by all that the right to travel over this highway was of the essence of the plaintiff's application, in fact the crucial point in the case. Plaintiff offered Kahn to prove that the cotton 'it proposed to haul would be moving in and a part of interstate commerce, and proved by him the buying of cotton in the interior and the concentration of it at the port for warehousing and further treatment there, and foreign shipment. It offered proof of other permits the Commission had granted since its application had been refused, read from the deposition of Swain district engineer of United States public roads, that in his opinion Highway No. 75 was capable of supporting any reasonable load which could be carried over it, and

was capable of carrying considerably more traffic than it did carry. As proof of discrimination, plaintiff relied upon the permits alone and did not prove that they were granted to persons in the same situation as plaintiff was, or doing the same kind and amount of business which plaintiff proposed to do. Some of the permits were shown to be specially for a peculiar and occasional kind of hauling, for instance, hauling race horses to racing meets; others were shown to have been merely shifting from one highway to another, still others were shown to have been for temporary or for small uses; not a single one was shown to have been for anywhere near the amount of hauling plaintiff wanted to do, or for hauling of the kind it asked permit for, cotton, which the proof showed was seasonably very heavy. In short, there was no proof that any discrimination had in fact been practiced. Plaintiff offered, too, the testimony of Andress as to traffic counts he had made, his opinion as to whether granting plaintiff's permit would cause congestion on the roads, and also his opinion as to what constitutes congestion.

Defendants offered the findings and the order of the Commission,[1] an affidavit of

---

[1] Order denying application of Texport Carrier Corporation for a permit authorizing the operation of a contract carrier motor carrier service in the transportation of cotton and other commodities from practically all points in Texas and Oklahoma, exclusively interstate, to Houston and from Houston to Dallas:

"The applicant * * * presented a list of equipment describing forty eight trucks in accordance with the law, but stated that they would probably require 200 trucks in their operations, and desired authority to use this number if necessary.

"The applicant asked for a permit authorizing the operation of an interstate contract carrier motor carrier service in the transportation of cotton for J. Kahn & Company from practically all towns in Texas and Oklahoma and on the back haul to transport commodities from Houston to Dallas over Federal Highway No. 75 for Fulton Bag & Cotton Mills, and the Dal-Tex Coffee Company.

"Edmund J. Kahn, testifying for the applicant, stated that the major portion of the traffic would be the transportation of cotton in bales for J. Kahn & Company and that the principal portion of such traffic would move over Federal Highway No. 75 into Houston; that on the back haul it was their desire to transport commodities for Fulton Bag & Cotton Mills and Dal-Tex Coffee Company from Houston to Dallas over said Federal Highway No. 75, but would not transport property for other than the above named three persons or firms, and would transport the latter two from Houston to Dallas only; that some 80% or more of the movement would be from September to April annually, and that last year J. Kahn & Company moved approximately 160,000 bales of cotton by truck within that period; that this cotton would be moved from points in Oklahoma, North, Northeast, Northwest and Central portions of Texas, from whatever points the same was purchased.

"Other witnesses, both for the applicant and for the protestants, testified at length in regard to congestion of the highways, as well as the character and conditions of such highways, construction and safety of drainage structures along the principal highways covered by the proposed operation, such witnesses including the State Highway Engineer. Considerable testimony was also given in regard to traffic counts by such witnesses, all of which is a part of the record in this hearing. It was also disclosed from such testimony that there were quite a number of narrow or one-way bridges over the route applied for, and that some of these structures were not in condition to carry heavy loads.

"The Commission finds that some of the highways over which a portion of the proposed traffic would move are not congested and are so constructed and maintained as to lead the Commission to believe that they could be expected to reasonably take care of the service applied for without proving an undue burden upon the same, and would not unreasonably interfere with the proper use of such highways by the general traveling public in the ordinary pursuits of life. This appears to be true of portions of North, Northeast and Northwest Texas, and, if the applicants had confined themselves to such highways, the Commission would have unhesitatingly granted authority to operate a contract carrier motor carrier service in such portions of the State where such conditions were found to exist. The whole operation, however, depending as it does upon entering the port city of Houston, where all of the cotton to be transported was to be shipped to other states or to foreign countries, and where all of the back loads were to be transported from, made it incumbent upon the Commission to either authorize such operation in and out of Houston, or else a permit would be of no benefit to the applicant.

"On numerous occasions this Commis-

Knapp covering highway and traffic conditions on No. 75 and other highways, and from the voluminous record made before the Commission the lengthy testimony of Knapp to the same matters. They also offered the testimony of persons living along the line which plaintiff desired a permit to haul over as to highway and traffic conditions.

Plaintiff's primary position is that it made out its case for relief by merely showing the interstate character of the proposed operations for which permit was denied, and that other permits over the same highway, some for interstate and some for intrastate commerce, have been since granted. It is quite plain that this will not do. The Commission, when operating within the sphere of its powers as statutory administrator to protect the highways of the state from injury and destruction, and to secure the safety and convenience of those primarily entitled to travel thereon, has authority over contract carriers hauling interstate commerce to regulate and prohibit, as well as over those hauling intrastate. In the case of an interstate carrier, as in the case of an intrastate carrier, if the order refusing a permit to a contract carrier

sion has been called upon to examine into the conditions existing along the principal highways of this State, with especial reference to the character and condition of such highways, the use made of the same by the general traveling public, as well as by carriers engaged in the transportation of property for hire, and the traffic conditions obtaining along such highways in the towns and cities traversed thereby. In determining the question of traffic over the cardinal highways of the State, the Commission has not been unmindful of its mandatory duty to inquire, not only into present conditions, but also to guard against future undue burdens upon the State's highways in order that the general public might pursue its ordinary duties without unnecessary danger to life and property, or without unreasonable interference.

"The Commission finds that approximately 1,000,000 people reside in the counties traversed by Federal Highway No. 75 between Dallas and Houston, and that a very large proportion of all vehicles registered for the last year, are owned and operated by the people of such counties. That the comparatively recent completion of this highway has shortened the distance from Dallas to Houston by approximately forty miles. That by reason of the shorter distance, traffic is rapidly deserting other routes from Oklahoma, New Mexico, Arkansas and North Texas to Houston, and gravitating to this highway. That such conditions will continue to grow, and that the flow of traffic over this highway will, in the natural course of events, grow heavier. That State Highway No. 35 is also subject to heavy traffic at all times, and of course, during the season of the movement of cotton, such traffic would be greatly increased. This highway now carries a great amount of traffic between Houston and the East Texas oil fields, and to place upon such highway the additional traffic sought by the applicant would add greatly to the hazards of the traveling public at the time of the year when residents along such highway are moving their crops to market and are using such highway more than at any other time. The Commission believes that the addition of a considerable fleet of trucks would interfere to an unreasonable extent with the use of this highway by the general traveling public and the residents along such route; that the additional traffic sought by the applicant converging upon Houston with the ordinary heavy movement of oil field supplies and the unusually heavy movement occasioned by the marketing of the cotton crop of a great section of the State, would also add to the hazards of the traveling public and would be an unnecessary interference with the use of the highway by the people residing along the same.

"The Commission further finds that in many of the smaller cities and towns traversed by these highways the latter is the principal or main thoroughfare, along which is situated the churches, schools and business institutions of such cities and towns. That in many instances such streets are narrow and are not of sufficient width as to safely provide for their use by the commercial trucks engaged in the transportation of cotton and merchandise. That the period of the year when practically all of the cotton will be moved is during the time when the children in the towns and cities along these routes will be in attendance upon the public schools, and will add considerably to the dangers of such children. That along this route the fall months are the busiest season of the year when every line of endeavor uses the highways to the maximum, and hundreds of thousands of bales of cotton and tons of merchandise are moved, into and out of Houston. That, owing to the expense involved, it would prove too heavy a burden upon the municipalities along this route to employ additional traffic officers as would protect the public against the extra risks that would inevitably result from fleets of

hauling goods rests on findings grounded on considerations of highway safety and convenience, the same presumption attends the order and findings and the same burden is on the complainant to overthrow them. Wald Storage & Transfer Co. v. Smith, 290 U. S. 596, 54 S. Ct. 129, 78 L. Ed. 524; Bradley v. Public Utilities, 289 U. S. 92, 53 S. Ct. 577, 77 L. Ed. 1053, 85 A. L. R. 1131; cf. Interstate Transit, Inc. v. Lindsey, 283 U. S. 186, 51 S. Ct. 380, 75 L. Ed. 953. It is only when the Commission has undertaken to exercise control not over the safety of the highways and of the traveling public, but over the commerce itself, that its orders refusing permits to interstate carriers are inoperative. Allen v. Galveston Truck Line, 289 U. S. 708, 53 S. Ct. 694, 77 L. Ed. 1463; Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286; Michigan Com. v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105; Bradley v. Public Utilities, supra. It insists, too, that its evidence as to traffic conditions established that the Commission's order was a purely artificial one, having no real relation to the legitimate powers purported to be exerted, and that defendants' evidence has not overthrown the case it made. Defendants urge that plaintiff has neither alleged nor proven a case for the exercise of the equitable jurisdiction. They argue that it has not shown, it cannot show, a vested property right entitled to equitable protection, because business operations on the highways of the state like those proposed by plaintiff are conducted not as matter of right, but of privilege. Ex parte Sterling, 122 Tex. 108, 53 S.W.(2d) 294; Ex parte Phares, 122 Tex. 104, 53 S.W.(2d) 297. They argue that if plaintiff has pleaded a case it has not proven one, both because the operation it mainly seeks a permit for, the cotton haul, will not be interstate commerce, Bacon v. Illinois, 227 U. S. 504, 33 S. Ct. 299, 57 L. Ed. 615; Federal Compress Co. v. McLean, 291 U. S. 18, 54 S. Ct. 267, 78 L. Ed. 622; Missouri Pacific v. Schnipper (C. C. A.) 56 F.(2d) 30; Chassanoil v. Greenwood, 291 U. S. 584, 54 S. Ct. 541, 78 L. Ed. 1004, and because, if its operations are to be confined to interstate commerce, as the Commission in making its order assumed they would, plaintiff has not sustained the heavy burden resting on it to overcome the presumption of verity attending orders and findings of the Commission under the Texas Motor Carrier Act.

■ We do not agree with defendants that plaintiff may not maintain this suit, because having no permit to operate as a contract motor carrier on the state's highways it has no vested right which equity will protect or because its proof as to the cotton operations does not sustain its pleading that it seeks a permit to engage in interstate commerce. Though the right to use the highways in the conduct thereover of the business of a con-

freight trucks operating over their principal thoroughfares during the fall season when the cotton crop is being gathered and transported to gins and market; and when, as stated, such highways are used the most.

"The Commission is of the opinion, and so holds that, while it might be possible under some circumstances to so arrange and dispose of the traffic as to allow some additional vehicles over Federal Highway No. 75 and State Highway No. 35 as would not unnecessarily endanger the traveling public, yet the evidence in this hearing submitted by the applicants themselves clearly shows that the movement would often be in great volume on short notice. That J. Kahn & Company buys quantities of cotton in large lots and immediately ships same to Houston by truck, this clearly indicating that at times possibly every vehicle that would be authorized to operate under the proposed permit might traverse the highways into Houston on the same day. That such a condition, especially during the peak of the movement of merchandise and commodities into and out of Houston would result in the unreasonable restriction of traffic along such highway as would not only result in grave danger to the general public, but would also result in undue burdens being placed upon such highway. The fact that on some days the traffic might be lighter than on other days, or during certain months of the spring and summer traffic along such highway might not be of sufficient volume as to constitute congestion, would not relieve this Commission of the duty placed upon it by the Legislature to restrict such traffic to the public safety for the entire year. After considering the evidence, the law, and its own rules and regulations, the Commission is of the opinion, and it is therefore

"Ordered that the application of the Texport Carrier Corporation for a permit authorizing the operation of a contract carrier motor carrier service be, and the same is hereby in all things denied.

"Railroad Commission of Texas
"[Signed]
        "Lon A. Smith, Chairman
        "C. V. Terrell, Commissioner."

tract carrier may be conditioned by the state as to both intra and inter state use, that right, until and except as validly conditioned, does exist and is sufficient, where other prerequisite facts are shown to support federal equity jurisdiction. Sage v. Baldwin (D. C.) 55 F.(2d) 968; Galveston Truck Line v. Allen (D. C.) 2 F. Supp. 488; Allen v. Galveston Truck Line, 289 U. S. 708, 53 S. Ct. 694, 77 L. Ed. 1463; Sproles v. Binford, 286 U. S. 374, 52 S. Ct. 581, 76 L. Ed. 1167; Stephenson v. Binford, 287 U. S. 251, 53 S. Ct. 181, 77 L. Ed. 288, 87 A. L. R. 721; Wald Storage & Transfer Co. v. Smith, 290 U. S. 596, 54 S. Ct. 129, 78 L. Ed. 524; Bradley v. Public Utilities, 289 U. S. 92, 53 S. Ct. 577, 77 L. Ed. 1053, 85 A. L. R. 1131; Packard v. Banton, 264 U. S. 145, 44 S. Ct. 257, 68 L. Ed. 596.

Neither do we agree with them that it is important to determine whether any of plaintiff's proposed operations for which it seeks a permit would be interstate in character. Admittedly some of them would be interstate, and the Commission, treating the application as plaintiff does, as one for a permit to engage only in interstate commerce, and rejecting it as such, based its refusal on grounds applicable alike to inter and intra state carriage.

We do agree with defendants, however, that plaintiff has not made out a case for equitable relief. A brief statement of principles will, we think, make plain the correctness of these views.

The state of Texas, by its Motor Carrier Act, article 911b, § 22b, Vernon's Ann. Civ. St. Tex., has declared that the business of carrying property for hire over the state's highways may not be conducted as a right, but only as a privilege, and in subordination to the necessities and interests of the general public for whose use the highways were primarily designed and laid down. It has enacted laws to bring this about, and has conferred upon the Railroad Commission as stat-

utory agent, wide powers to control and regulate the business of carrying for hire so as to adapt it to traffic and traffic conditions, and make effective the legislative declaration of policy.[2] Stephenson v. Binford, 287 U. S. 251, 53 S. Ct. 181, 77 L. Ed. 288, 87 A. L. R. 721; Sproles v. Binford, 286 U. S. 374, 52 S. Ct. 581, 76 L. Ed. 1167; Railroad Com. v. Inter-City Forwarding Co. (Tex. Civ. App.) 57 S.W.(2d) 290; Ex parte Sterling, 122 Tex. 108, 53 S.W.(2d) 294; Ex parte Phares, 122 Tex. 104, 53 S.W.(2d) 297.

The Motor Carrier Act is a comprehensive one. Among other things, it authorizes the filing of suit in the district court of Travis county against the Commission as defendant, to set aside any decision, rule, order, or act with which any party is dissatisfied. It gives the suit precedence both in the trial and in the appellate court. It provides that the suit shall be tried and determined as other civil cases are. It provides, in addition: "In all trials under this section the burden of proof shall rest upon plaintiff, who must show by the preponderance of evidence that the decisions, rates, regulations, rules, orders, classifications, acts, or charges complained of are unreasonable and unjust to it or them." Vernon's Ann. Civ. St. Tex. art. 911b, § 20. It provides, too, for the granting of an injunction upon equitable principles. Under this statute it is settled that the findings and orders of the Commission are by law prima facie true, and that the reviewing court, on the statutory resort to it, cannot substitute its judgment for that of the Commission and disturb its findings and orders, where there is any substantial basis in the evidence for them. That is, unless it is shown that their rulings are arbitrary, unreasonable, or unlawful. Railroad Com. v. Shupee (Tex. Civ. App.) 57 S.W.(2d) 295, 296; Shupee v. R. R. Com. (Tex. Sup.) 73 S.W.(2d) 505. In such a proceeding the trial is de novo in the sense that while the issue is as to the reasonableness of the Commission's order, and it stands

---

[2] Article 911b, § 22b: "Declaration of Policy. The business of operating as a motor carrier of property for hire along the highways of this State is declared to be a business affected with the public interest. The rapid increase of motor carrier traffic, and the fact that under existing law many motor trucks are not effectively regulated, have increased the dangers and hazards on public highways and make it imperative that more stringent regulation should be employed, to the end that the highways may be rendered safer for the use of the general public; that the wear of such highways may be reduced; that discrimination in rates charged may be eliminated; that congestion of traffic on the highways may be minimized; that the use of the highways for the transportation of property for hire may be restricted to the extent required by the necessity of the general public, and that the various transportation agencies of the State may be adjusted and correlated so that public highways may serve the best interest of the general public."

unless overthrown, whether it is overthrown or not is determined not upon the record before the Commission, but upon the evidence adduced in the trial court. If this is sufficient to overthrow the prima facies attending the Commission's orders, plaintiff prevails. If it is not, the order stands. Railroad Com. v. Shupee, supra, and Shupee v. R. R. Com., supra. Railroad Comm. v. Galveston Chamber of Commerce, 105 Tex. 115, 145 S. W. 573; Railroad Com. v. Weld & Neville, 96 Tex. 409, 73 S. W. 529. Such suits can be brought, where diversity and amount exist, as well in the federal as in the state court of Travis county. Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 S. Ct. 1047, 38 L. Ed. 1014. In such suits the validity and authority of the order are determined by the operation and effect of it. The motives and purposes of the Commission are not germane to the inquiry, Railroad Com. v. Weld & Neville, supra, any more than they are in suits against members of the Commission brought on constitutional grounds, People's Petroleum Producers v. Sterling (D. C.) 60 F.(2d) 1041.

■■■ The statutory action thus provided for is a true suit. It is not even quasi administrative or legislative in character, as were those dealt with in Prentis v. Atlantic Coast Line Co., 211 U. S. 210, 29 S. Ct. 67, 53 L. Ed. 150; Porter v. Investors' Syndicate, 286 U. S. 461, 52 S. Ct. 617, 76 L. Ed. 1226. It is a purely judicial one. Railroad Com. v. Weld & Neville, supra; Porter v. Investors' Syndicate, 287 U. S. 347, 53 S. Ct. 132, 77 L. Ed. 354. Plaintiff was therefore not obliged to resort to it in exhaustion of administrative remedies before bringing this suit. City Bank v. Schnader, 291 U. S. 24, 54 S. Ct. 259, 78 L. Ed. 628. When, however, it elected, instead of pursuing the statutory remedy afforded, to bring this suit in the federal court on constitutional grounds, it assumed a heavy burden. It is one of the settled principles of the exercise of the jurisdiction which plaintiff invoked that federal courts will not lightly interfere by injunction, with the actions of state administrative officers in enforcing state laws. Especially is this true in administrative matters requiring discretionary action. They will, of course, grant an injunction when the equities of the bill are plain, but only when they are. Amazon Petroleum Corporation v. Commission (D. C.) 5 F. Supp. 638. A mere claim of unconstitutionality is not sufficient. There must be shown also a really irreparable injury for which there is no adequate legal remedy. Northport, etc., Co. v. Hartley, 283

U. S. 568, 51 S. Ct. 581, 75 L. Ed. 1275; Fenner v. Boykin, 271 U. S. 242, 46 S. Ct. 492, 70 L. Ed. 927. There is, too, the further controlling principle that in every suit of this kind the burden is upon plaintiff to overthrow the presumption of verity which attends the Commission's findings and orders by a positive and clear showing that the action of the Commission was arbitrary; that is, that it represents not the reasonable exercise of the Commission's proper jurisdiction, but the unreasonable and arbitrary exertion of power in violation of the constitutional protection invoked. Nectow v. Cambridge, 277 U. S. 183, 48 S. Ct. 447, 72 L. Ed. 842; McLeaish & Co. v. Binford (D. C.) 52 F. (2d) 151; Danciger Oil & Ref. Co. v. Smith (D. C.) 4 F. Supp. 236; Amazon Petroleum Corporation v. R. R. Com. (D. C.) 5 F. Supp. 638.

■■■ When the full, definite, and concrete findings of the Commission are considered in the light of these principles, it cannot be maintained that the evidence plaintiff has offered in support of its right to institute a new motor carrier service, using forty-eight to two hundred trucks over the most used highway, and between and through the most densely populated sections of the state, has overcome those findings by showing them to be arbitrary, capricious, and unreasonable. In the light of these principles and of the evidence offered in this case, it seems plain to us that the findings and order of the Commission stand.

The injunction prayed for is denied.