## NU-ENAMEL CORPORATION v. ARM-STRONG PAINT & VAR-NISH WORKS.

### No. 5505.

Circuit Court of Appeals, Seventh Circuit.

Dec. 20, 1935.

As Amended on Denial of Rehearing Feb. 6, 1936.

Edward S. Rogers, William T. Woodson, and James H. Rogers, all of Chicago, Ill., for appellant.

**2**

Moses Levitan, Harry H. Krinsky, and James J. Glassner, all of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and ALSCHULER, Circuit Judges.

EVANS, Circuit Judge.

There are three questions presented by this appeal, which is from a decree dismissing a complaint which charged appellee with infringing appellant's trademark "Nu-Enamel" and with unfairly passing off its product for appellant's. These questions are: (1) Has appellant a valid trade-mark in "Nu-Enamel"? (2) Is this trade-mark infringed by appellee's subsequently issued trade-mark "Nu-Beauty Enamel"? (The words are printed on two lines, the word "Enamel" being on the second.) (3) Was a cause of action based on unfair trade practices and triable in this suit, stated in the complaint?

The substance of the complaint is set forth in the margin.[1]

Both parties are residents of Illinois.

We are not satisfied that the words "Nu-Enamel" (the height of the letters varied) may not be covered by a valid trade-mark. Determination of the question turns largely upon the use of the word "Nu." The allegations to the effect that in 1922 appellant began its business, which has grown until three thousand retail stores sell its products exclusively; that these stores are operated under the name "Nu-Enamel"; that the name "Nu-Enamel" has, through extensive sales and advertisement, acquired a special meaning, namely, appellant's goods; that after such meaning was acquired and in the year 1933, appellant registered the trade-mark "Nu-Enamel," which it here asserts is infringed—must be accepted as true, and, so accepted, there may be a basis for a valid trade-mark. It may be that upon final hearing the showing will not sustain these allegations. We express no opinion in advance on what that proof must be, for each case must turn on its individual facts.

The court is not justified in assuming, without evidence, that "Nu" is phonetic spelling of *new*. Other possible meanings are well nigh as plausible. Moreover, the hyphen cannot be overlooked. The fact that the product was not *new* when the

---

[1] "1. Plaintiff is the successor of Nu-Enamel Paint Co., Inc. Plaintiff and its predecessor since 1922 have been engaged in the business of selling paints, varnishes and floor wax under the trade mark 'Nu-Enamel.' The business of the plaintiff has grown from small beginnings in the year 1922 to a large and prosperous business. Plaintiff owns and operates throughout the United States and foreign countries more than three thousand * * * retail stores in which plaintiff's products are sold exclusively. Plaintiff's stores are operated under the name 'Nu-Enamel' and plaintiff's said products under the trade mark 'Nu-Enamel' have been extensively advertised throughout the United States and foreign countries. * * *

"2. Plaintiff's products have met with popular approval and as a result of plaintiff's extensive sales and advertising, the name 'Nu-Enamel' has come to mean and is understood to mean, throughout the United States, including the State of Illinois and the City of Chicago, the plaintiff and plaintiff's products only and the word 'Nu-Enamel' is a mark by which the goods of the plaintiff are distinguished from other goods of the same class.

"3. Plaintiff, after due and proper proceedings in that behalf, duly registered its trade mark 'Nu-Enamel' in the United States Patent Office on November 14, 1933, No. 308024. Said registration is valid and subsisting, uncancelled and unrevoked and plaintiff is the owner thereof. A certified copy of said registration is filed herewith as Plaintiff's Exhibit B.

"4. Defendant, Armstrong Paint & Varnish Works, within the last few months, has put upon the market paints and varnishes which it sells under the designation 'Nu-Beauty Enamel.' A specimen of defendant's label on which the name 'Nu-Beauty Enamel' is displayed is filed herewith as Plaintiff's Exhibit C.

"5. Plaintiff is informed and believes and states the fact to be that defendant adopted the name 'Nu-Beauty Enamel' as a trade mark for its products, with full knowledge of the prior and extensive use by plaintiff of the trade mark 'Nu-Enamel.'

"6. As a result of defendant's use on its goods of the colorable imitation, 'Nu-Beauty Enamel,' of plaintiff's registered trade mark 'Nu-Enamel' retail merchants are enabled to and do substitute and pass off defendant's products bearing the name 'Nu-Beauty Enamel' as and for the products of the plaintiff.

"7. Plaintiff alleges that the name 'Nu-Beauty Enamel' is a colorable imitation of plaintiff's registered trade mark 'Nu-Enamel' and is an infringement thereof, and unless restrained by this court that defendant will continue to infringe plaintiff's registered trade mark to plaintiff's irreparable injury."

trade-mark was registered (extensive sales and national advertisement had been conducted for ten years) tends to negative the idea that "Nu" meant *new*.

In disposing of this appeal we are confronted not by the ultimate fact showing, but by a record wherein the decree is upon a motion to dismiss a complaint which in turn contains sufficient fact allegations to support a valid trade-mark.

*Unfair Competition.* This phase of the appeal tenders only a fact issue. Here again we must accept the allegations of the complaint as true.

■ Appellee argues that, there being no diversity of citizenship of the parties, the Federal court could not proceed with the unfair trade issue upon the failure of appellant's alleged trade-mark claim. A contrary conclusion is the position of appellant, and it cites Waterman Co. v. Gordon (D.C.) 8 F.Supp. 31, Id. (C.C.A.) 72 F. (2d) 272; Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148. We have no doubt but that the so-called unfair competition phase of the case may be heard with the trade-mark infringement charge provided the trade-mark be held valid. It follows, therefore, at this time and on the hypothesis that the trade-mark be held valid, that we must dispose of the right of the District Court to pass upon the unfair competition charge. It is unnecessary for us to pass on appellant's argument, that where one in good faith invokes Federal court jurisdiction by allegations charging infringement of a registered trade-mark the court will hear an unfair competition complaint joined with the trade-mark infringement suit, even though the court finds the trade-mark invalid.

■ It seems to be the view of some counsel that one who has sought and secured a trade-mark which is invalid, or who has used a term to describe an article covered by a patent, is in a less advantageous position than one who has not had the added protection which arises through the Government grant of a patent or a trade-mark registration. We see no legitimate reason, although there may be dicta to support the view, for imposing this handicap upon one who is endeavoring to prevent unfair trade competitive methods. Unfair methods of trade are condemned because they are unfair, a specie of fraud,

a cheat. The manufacturer or merchant who holds or who once held a patent monopoly which has expired is entitled to protection against unfair methods of trade just as any other manufacturer. The same is true of holders of a registered trade-mark later held to be invalid.[2] In considering an unfair trade method case, we must dismiss as of no bearing the fact that the party seeking relief previously held a valid or an invalid patent or a valid or invalid trade-mark. He is in a court of equity as one who is honestly engaged in commerce and seeking protection against another who is, by methods which are unfair, passing off its goods for those of another. He merely asks the court to stop a business competitor from unfair trade practices. We confuse the issue when we color appellant's right to relief by the Government grant of monopoly and assume that the right to relief ceases, or is lessened, when the grant expires.

■ It is true the patent grant or the trade-mark creates a monopoly. It follows that a secondary meaning which is created solely as a result of the monopoly may not be included in the secondary meaning aspect of the case. Nor can one claim secondary meaning to a word or phrase when the secondary meaning is directly and solely traceable to a trade-mark, and nothing more is shown. In short, the Government protection (patent or trade-mark) cannot be used to extend or bolster a cause otherwise without support, to create a secondary meaning to a word or phrase. On the other hand said Government protection (by patent or trade-mark) should not be used to defeat the possessor's right to establish a business, after the Government's grant has expired—nor should a right to a trade-mark which has been earned before the trade-mark has been registered be defeated by the subsequent registration of the trade-mark.

■ Appellee had the clear right to enter the business of making and selling enamel products. Equally clear was its right to make a product distinguishable from an *old* product and call it *new*. It might use a phonetic method of spelling *new* under certain circumstances. It could not, however, *adopt* phonetic spelling or use any combination of words which had *the appearance, the purpose, and the effect of passing off its goods as and for another's.*

[2] This observation does not apply if plaintiff comes into court with unclean hands.

Was it to describe a *new* product so as to distinguish it from an old product that appellee chose the word "Nu"? Or was it to appropriate appellant's business by unworthy, unfair methods, accomplishable through the use of "Nu"? Protestations of innocence on its part are idle. The allegations of the complaint, which we must assume are true, are to the effect that the purpose was accomplished—that appellee succeeded in selling its product as appellant's.

Some there are whose conception of business integrity and fair play is rather hazy, and generally ruled by self-interest, who attempt to justify efforts to acquire the business which another has developed through many years of fair dealing and through the expenditures of vast sums in advertising and in establishing a good will. This illegitimate activity has increased because in the past few decades the practice has grown among established enterprises of giving a name, or a particular form of container, or form of product, or other mark of identification to a product it makes or sells so that the public may know its product. Good will has followed familiarity with and use of the commodity. In some instances the product has been patented. After the patent has expired, the same strenuous efforts are made to familiarize the users with the name or a word, which in its beginning may have been descriptive, but which because of form of container, combination of letters, etc., has identified it as the product of a certain individual or company. By so doing a property right is developed which should be respected. Whether the right is invaded is a question of fact to be determined in each case. Whether in a given case the facts show an attempt to steal another's business by using similar names or form of products or both, or is an attempt on the part of the established company to keep out competitors by an over-extension of descriptive words, can only be determined by a study of the facts in each case.

The question of infringement is also one of fact, and under all the circumstances in this case must be determined by the evidence. Moreover, dismissal of the suit would not be justifiable even though no infringement were found, provided the trade-mark be held valid and a secondary meaning of the phrase "Nu-Enamel" were established.

The decree is reversed with directions to deny appellee's motion to dismiss the bill of complaint.