E. C. LAW et al., Appellants,

v.

TEXAS DELIVERY SERVICE, INC.,
et al. Appellees.

No. 15592.

Court of Civil Appeals of Texas.

Dallas.

March 11, 1960.

Rehearing Denied April 29, 1960.

Will Wilson, Atty. Gen., James N. Ludlum and Morgan Nesbitt, Asst. Attys. Gen.,

Walter Caven and Charles E. Crenshaw, Austin, for appellants.

Currie, Kohen & Freeman, Dallas, for appellees.

Phinney, Hallman & Pulley, Dallas, amicus curiae.

DIXON, Chief Justice.

This is a suit for declaratory judgment and injunction brought by appellees Texas Delivery Service, Inc., and six other companies against appellants E. C. Law and other persons, all officials or employees of Texas Department of Public Safety, to restrain appellants from arresting and prosecuting appellees for alleged violations of the Texas Motor Carrier Act, Art. 911b Vernon's Ann.Civ.St., and Art. 1690b of the Penal Code.

Appellants, along with their answer, filed pleas in abatement and to the jurisdiction, which pleas were overruled.

Appellees allege, and it is stipulated as a fact, that they are engaged in the local delivery business, transporting property for hire for the general public within Dallas County, Texas and within the "metropolitan area" of said County. Appellees further allege, and it is stipulated, that they never operate their trucks upon a public highway not included within the corporate limits of an incorporated city or town in Dallas County. Therefore they claim that they are not subject to the Texas Motor Carrier Act, are not subject to regulation by the Texas Railroad Commission, and are not required to apply for and receive a certificate of public convenience and necessity from the Railroad Commission in order to operate their trucks and business.

Several common carriers, operators of trucks and railroads, filed pleas of intervention, in which they espoused the cause of appellants, asserting that appellees as a matter of law are subject to the Texas Motor Carrier Act. However appellees' motion to strike was sustained as to all inter-

venors except Santa Fe Trails Transportation Company and three other companies engaged in the business of transportation of freight by trucks for hire.

Following trial the court entered judgment declaring that (1) appellees are entitled to continue their operations so long as such operations are confined to moving from and to and between incorporated cities, towns and villages in the County of Dallas, if in the course of any such transportation no highway in an unincorporated area is traversed; (2) the true meaning of the Texas Motor Carrier Act is that authority from the Texas Railroad Commission is not required except in those instances where in the course of the journey from one incorporated city, town or village to another there is an intervening space of public highway which is not within the corporate limits of any incorporated city, town or village; and (3) the territorial application of the judgment rendered by the court is confined to Dallas County only, such being the scope of appellees' pleadings and operations. The court also granted a permanent injunction restraining appellants from interfering with the operations of appellees provided said operations are conducted within the scope and limitations set forth in the judgment.

There appears to be no dispute about the facts. For purposes of this lawsuit a definition of the term "metropolitan area" was stipulated to be the following:

" * * * the several municipalities in Dallas County which have a common boundary either with the City of Dallas itself, or with a municipal corporation that does have a common boundary with the City of Dallas".

One of the witnesses was appellant E. C. Law, License and Weight Captain of Region 1, Dallas, an employee of Texas Department of Public Safety, which Department is charged with the enforcement of Texas Motor Carrier Act, Art. 911b, V.A. C.S., and Art. 1690b, Texas Penal Code.

Captain Law told of the factual background leading up to the present controversy. Until about 1953 the only cities whose boundaries were contiguous to those of the City of Dallas were the cities of Highland Park and University Park. In 1954 other towns began to grow until their boundaries were contiguous with those of the City of Dallas. Seeking information regarding the situation, Captain Law came across a letter written earlier by Bryan Bell, then Director of Motor Transportation of the Texas Railroad Commission. Bell's opinion was that local delivery service carriers could travel from town to town in Dallas County if the city limits of the towns touched anywhere, regardless of whether the actual route they travelled was partly on a public highway. Later Chief Odom, following a conference in Austin, Texas, directed Captain Law to enforce the Act as to carriers going from Dallas to other cities unless the carriers were always actually within the city limits of one of the contiguous cities. The law was enforced in that manner until 1958 when the Attorney General of Texas issued an opinion to the effect that a carrier is subject to the Texas Motor Carrier Act if he travels from one incorporated town to another even if he does not travel any open road or highway between towns.

Captain Law further testified that he has been instructed that local delivery services which operate between cities are subject to the Motor Carrier Act, though the cities are contiguous and the route between them includes no open space on the highway not in an incorporated city; and he has been ordered to enforce the law accordingly. However he also has been directed by Col. Homer Garrison of the Department of Public Safety not to file prosecution proceedings in such cases until the present appeal is determined.

A map was introduced in evidence showing that Highland Park, University Park and Cockrell Hill are not only cities with boundaries contiguous to the City of Dallas, but are island cities entirely surrounded

by Dallas. The cities of Grand Prairie, Irving, Mesquite, Garland, Farmers Branch, Lancaster and Richardson are incorporated municipalities whose boundaries are contiguous to Dallas. Carrollton is contiguous to Farmers Branch. Several other municipalities are either contiguous to Dallas, or are contiguous to municipalities which are contiguous to Dallas.

V.A.T.S. Penal Code, Art. 1690b provides for the arrest, prosecution and fine of persons violating the Motor Carrier Act. It is under this provision of the Act that appellants intend to proceed in their efforts to enforce the law against appellees.

In their first three points on appeal appellants assert that the trial court erred (1) in overruling appellants' plea to the jurisdiction, since appellees' suit seeks equitable relief to enjoin criminal proceedings, and to stay the hands of law enforcement officials in enforcing criminal law; (2) in granting injunctive relief, since appellees have an adequate remedy at law by raising their defenses, if any, in a criminal proceeding if filed; and (3) in failing to dismiss appellants' suit for want of jurisdiction, for the reason that equity will not attempt to stay criminal proceedings, or attempt to stay the hand of police officers in enforcing criminal law except where the law attempted to be enforced is (a) unconstitutional and void, and (b) its enforcement will result in irreparable injury to vested property rights.

Appellants' first three points are well taken. Ex parte Sterling, 122 Tex. 108, 53 S.W.2d 294, 295, was a habeas corpus proceeding involving an injunction restraining police officials of Navarro County and the State of Texas from arresting and prosecuting haulers of cotton in trucks where the load weighed in excess of 7,000 pounds. The truck haulers claimed that the law was discriminatory, and that they had a right to haul loads of 11,000 pounds, the same as operators engaged in short hauls. Police officials were arrested and placed in jail for violating the injunction and appealed to our Supreme Court by way of habeas corpus.

In granting the writ and ordering the relators discharged, the Supreme Court said:

"Under the well-established rules of equity jurisprudence, it is clear that the district judge was without authority to issue the writ of injunction to prevent the enforcement of the law regulating the operation of motor-trucks upon the highways of this state unless the petition for such injunction clearly showed the existence of two facts, viz.: First, that such law is unconstitutional and void; second, that its enforcement constitutes a direct invasion of a vested property right of the complainants. * * * We are of the opinion that the allegations of the petition in the case in which the injunction was issued do not show the existence of either of said facts. * * * We are further of the opinion that the petition upon which the injunction was issued shows upon its face that no vested property right of the complainants would be affected by the enforcement of this act. The complainants in the proceeding in which the injunctions were issued are not making, in common with the general public, the ordinary use of the highways, but an extraordinary one for the purpose of carrying on a business for profit. That they have no vested right to so use such highways is beyond question. Public highways and streets are constructed and maintained at the public expense. No person, therefore, can insist that he has, or may acquire, a vested right to use such streets and highways in carrying on a commercial business."

In Ex parte Phares, 122 Tex. 104, 53 S. W.2d 297, 298, the facts were slightly different. The truck operators claimed that they were entitled to carry 14,000 pound loads because the routes over which they

operated had no common carrier receiving and unloading points equipped to transport the commodities they handle, thus bringing complainants within Section 7 (Section 5–b) of the Motor Vehicle Act, Chapter 282, 42nd Legislature, Vernon's Ann.P.C. art. 827a.

In disposing of the above contention our Supreme Court said:

"The effect of complainants' averment in this respect is that they are threatened by relators with criminal prosecutions for acts which do not in fact constitute a violation of said law.

"Assuming these allegations to be true, still there is no basis for the interposition of a court of equity. The power and authority to interpret this act rest exclusively with the courts of this state exercising criminal jurisdiction. A court of equity will not, through the medium of an injunction, determine whether given acts violate the provisions of a criminal statute. Such construction can be had only in the due and orderly enforcement of the statute through the forum prescribed for the trial of criminal cases."

Other cases which uphold appellants' view in this suit are Malone, et al. v. City of Houston, Tex.Civ.App., 278 S.W.2d 204; Stecher v. City of Houston, Tex.Civ.App., 272 S.W.2d 925; State ex rel. Flowers et al. v. Woodruff et al., 150 Tex.Cr.R. 255, 200 S.W.2d 178. Kemp Hotel Operating Co. v. City of Wichita Falls et al., 141 Tex. 90, 170 S.W.2d 217; State, et al. v. Ferguson, 133 Tex. 60, 125 S.W.2d 272; Barkley v. Conklin, Tex.Civ.App., 101 S.W.2d 405; and Greene v. City of San Antonio et al., Tex.Civ.App., 178 S.W. 6.

In the instant case appellants do not allege that the statute in question is unconstitutional and void. They say in effect that if the statute is given the interpretation for which they contend they have a valid defense against its enforcement against them in a criminal prosecution. Such a contention is not sufficient to invoke the aid of

equity in denial of the jurisdiction of criminal courts.

Moreover appellants have failed to show that the enforcement of the statute constitutes a direct invasion of their vested property right. As pointed out in the cases above quoted and cited, no one has a vested right to use city streets and public highways for the transportation of freight or passengers for hire.

Among cases cited by appellees is Galveston Truck Line Corporation v. State, Tex.Civ.App., 123 S.W.2d 797. The holding there is not in point here. In that case the State brought suit for injunction to restrain appellants from violating the Motor Carrier Act. The statute itself Vernon's Ann.P.C. Art. 1690b(c) expressly gives the State the right to maintain such a suit.

Appellants' first three points on appeal are sustained.

Appellants have briefed three other points but in view of our sustaining the first three points, it is unnecessary for us to pass on the fourth, fifth and sixth points.

The judgment of the trial court will be reversed, and judgment will here be rendered dismissing appellees' cause of action.

### On Rehearing

In the interest of accuracy we quote the testimony of Captain Law with reference to the letter from Director Bryan Bell:

"In my searches I come up with a letter that was wrote by Mr. Bryan Bell, his personal opinion, to someone we had filed charges against, that if the city limits that touched were contiguous, they would not have to have authority."

Appellees say that we erred in our original opinion in making this statement:

"V.A.T.S. Penal Code, Art. 1690b provides for the arrest, prosecution and fine of persons violating the Motor Carrier Act. It is under this provision·

of the Act that appellants intend to proceed in their efforts to enforce the law against appellees."

Appellees point out that in their petition they pled that they were threatened with arrest and the stopping of their business either by criminal prosecutions or by injunctive process.

The paragraph quoted from our opinion was based on the testimony of Captain Law as follows:

"And Colonel Garrison asked the Attorney General for a ruling in view of a criminal prosecution, which ours would be if we filed on one." * * *

"Q. (By Mr. Currie) That is what you are presently doing? A. Yes, Sir.

"Q. Except in this instance where we have got a stipulation that you are not going to do it as long as this case is pending, or until the Attorney General—A. I have orders from Colonel Garrison not to file on those type of cases until this case is settled.

"Q. If it hadn't been for our bringing this case, you would have already been doing it? A. Yes, sir. * * *

"Q. If this lawsuit were not pending, and you had not received the instructions from your superiors that you previously mentioned, and you filed on a truck line such as one of the plaintiffs here, for operating as described in their petition, would you be doing so as an official act of the Department of Public Safety? A. Yes, sir, that is the only interest I have in this case.

"Q. And you would not be doing so as E. C. Law, an individual? A. No, sir.

"Q. You would be doing it in your official capacity? A. Yes, sir."

In their motion for rehearing appellees cite three cases which they did not cite in their original briefs. These three cases are: New Way Lumber Co. et al. v. Smith,

128 Tex. 173, 96 S.W.2d 282 (affirming Smith et al. v. New Way Lumber Co., Tex. Civ.App., 84 S.W.2d 1104); Anderson, Clayton & Co. et al. v. State ex rel. Allred, 122 Tex. 530, 62 S.W.2d 107; Anderson, Clayton & Co. et al. v. State ex rel. Allred, 125 Tex. 453, 82 S.W.2d 941 (reversing Tex. Civ.App., 68 S.W.2d 544).

A study of Anderson, Clayton litigation properly begins with Anderson, Clayton & Co. et al. v. State ex rel. Allred, 122 Tex. 530, 62 S.W.2d 107. The suit began when the State filed its petition for injunction under authority of Art. 1690b, Sec. (c). The defendants filed a cross-action. The State then took a non-suit. In answering certified questions a Commission of Appeals, opinion adopted, held that where the State voluntarily invokes the jurisdiction of a court by submitting its rights for adjudication it will be bound thereby, and a defendant will be entitled to invoke the court's jurisdiction to plead and prove a defense or a cross-action germane to the matter in controversy. No such situation is present in the instant case. The holding in the Anderson, Clayton case in 62 S.W.2d 107 is not applicable here.

Following the answers to the certified questions, the Anderson, Clayton case was returned to the District Court where an instructed verdict was granted by the trial court. Judgment was affirmed by the Court of Civil Appeals. 68 S.W.2d 544. But the Supreme Court again reversed the case holding that a fact issue was presented for determination by a jury. Anderson, Clayton & Co. et al. v. State ex rel. Allred, 125 Tex. 453, 82 S.W.2d 941. These later appeals involve the same case and are but a continuation of the case involved in 62 S.W. 2d 107. Certainly jurisdiction having once been obtained, continued throughout successive appeals. Under the circumstances none of the appeals lends support to appellees' contention.

Neither do we think the holding in New Way Lumber Co. v. Smith, 128 Tex. 173, 96 S.W.2d 282 lends support to appellees'

contention. In that case the statute was attacked as being unconstitutional and void. Appellees in the case now before us make no such allegation or claim in regard to the statute.

Appellees in this case say in substance that if we accept their interpretation of a valid penal statute, they must be found not guilty of violating said statute. We think they should urge their defense in a criminal action, if the State files criminal proceedings against them, pursuant to Art. 1690b, §§ (a) and (b) Vernon's Ann.P.C.; or in a civil action, if the State elects to file a suit for injunction pursuant to Art. 1690b, § (c), Vernon's Ann.P.C.

Appellees' motion for rehearing is overruled.