Lyle **HENNESSEY** et al., Appellants,

v.

**INDEPENDENT SCHOOL DISTRICT NO. 4, LINCOLN COUNTY, Oklahoma, et al., Appellees.**

No. 48751.

Supreme Court of Oklahoma.

July 27, 1976.

Richard James, Stroud, for appellants.

Larry L. French, Edwards & French, Seminole, for appellees.

DOOLIN, Justice.

This is an action filed in the district court by the Wellston Parent Teacher Association (PTA) seeking a writ of mandamus to require Independent School District No. 4, Lincoln County School Board (Board) to allow PTA use of school facilities for its meetings. The trial court denied the writ. PTA appeals to this court claiming action by Board is arbitrary, discriminatory and a denial of rights guaranteed by the Constitution of the United States and Oklahoma in that Board has permitted certain other groups access to the building for their meetings to the exclusion of PTA with no rational basis for such distinction.

We agree with PTA and therefore reverse and remand this cause to the trial court with directions to issue the writ as requested.

Board has uniformly permitted outside organizations such as Lions Club, Young Homemakers' Organization, Booster Club, 4H Club, Boy Scouts, Bible Lovers' League and Vocational Agriculture Teachers to use the building as authorized by 70 O.S.1971 § 5–130 which provides:

> "The board of education of any school distric¹ may, under such regulations and condit ⁱⁿs as it may prescribe, open any school building and permit the use of any property belonging to such district for religious, political, literary, cultural, scientific, mechanical or agricultural purposes, and other purposes of general public interest and may make a reasonable charge to cover the cost of the use of such building and property."

The use of these organizations has been with permission of the superintendent and such requests have not necessarily been submitted to Board for its approval. PTA applied several times to Board requesting that it be permitted use of the building and each time its application was denied. There is no evidence any other organization has been refused.

At some time after PTA's first request was denied, Board adopted rules for use of school property by outside organizations. These rules, in addition to general platitudes, contained the following provisions:

" * * *

The Wellston School Board will not tolerate nor continue affiliation with any organization that it determines to be disruptive to or *unsupportive* of the school board or any part of the school system. The Wellston School Board of Education reserves the legal right under state law to, at any time, discontinue any affiliation it might have with any outside organization and refuse the use of school property when it should possibly determine such actions are warranted. Organizations as whole or organizations that allow their members to carry on in a fashion that attempts to exercise school board or administrative authority or interfere with that authority, exploit school children for personal gain, *deal in personalities, or engage in frequent criticisms against the school system and the school personnel in particular, will not be tolerated and the use of school property by such organizations will be discontinued*, and the school board will withdraw its approval of affiliation with such organizations. * * * * * *" (Emphasis supplied).

Board further provided a form to be completed by an organization requesting use of the building, stating the organization will abide by the rules for use of school property. Although the agreement was never submitted to PTA by Board, PTA has always been ready and willing to sign it, and admittedly was not turned down by Board because of any refusal to execute the agreement.

Board's refusal to allow PTA to use its building fails for the following reasons:

■ First, there is no evidence any of Board's stated rules, constitutional or otherwise, have been violated. The record is absolutely void of any testimony as to any legitimate reason why PTA should be forbidden use of the building, or that PTA is not supportive of the school system. The Superintendent of Schools testified he had no personal knowledge of any past action of PTA that would be considered a violation of Board's regulations.

The general statement in the minutes of the Board that use by PTA of school facilities would not be in best interests of community is unsupported by *any* evidence. To the contrary, it was shown that in the past PTA has sponsored many admittedly worthwhile activities for the community children. The superintendent admitted the guidelines and objectives of PTA are all worthwhile. He indicated PTA's request was refused because a vote of the teachers showed a majority of them were not interested in becoming members of PTA. PTA is chartered and supported by both the state and national Parent-Teacher Association. There is nothing in either organization's rules or guidelines requiring teachers to be members in order to be recognized.

Board's reasoning is *circulus in probanda*; PTA is not comparable to other organizations, because the Board does not officially recognize it, since it is not comparable to other organizations. 70 O.S.1971 § 5-130 was certainly not intended to omit PTA objectives from its list of permitted purposes and it cannot be successfully argued PTA is not comparable to the acceptable organizations.

■ The other grounds for reversal are constitutional. Board's rules and regulations as set forth above and their implementation violate the first and fourteenth amendments to the Constitution of the United States as an abridgment of freedom of speech, and a denial of equal protection and further are a violation of the Constitution of Oklahoma Art. 2, § 22. A regulation by a governmental body such as a school board which permits a public official or body to determine what expressions or views will be permitted or allows the board to engage in invidious discrimination among groups by use of a statute

granting discretionary powers and by a system of selective enforcement cannot stand.[1] A governmental body may not restrict expressive activity because of its message. Free expression must not, in the guise of a regulation, be abridged or denied.[2] Board as instrumentality of state may not restrict speech simply because it finds views expressed by any group abhorrent.[3]

A school board's denial of use of school facilities to a political party because it did not agree with the policies of the organization has been held to be an invalid prior restraint.[4] Prior restraints in order to withstand constitutional attack must be narrowly drafted so as to suppress only that speech which presents a clear and present danger of resulting in serious substantial evil.[5] Board's regulations do not withstand such attack and are invalid because they exceed constitutionally permissible limitations on freedom of speech.[6]

There is no doubt 70 O.S.1971 § 5–130 gives Board absolute discretionary authority as to whether or not to open a school building to activities and meetings of outside organizations. The only absolute discretion exercised however is whether to open the building to outside organizations or not to open it. Once this discretion has been exercised and the decision has been made to permit use of property for any of the enumerated purposes, then it must not adopt a discriminatory and un-

constitutional policy as to who will be allowed access to its facilities. Its classifications must be reasonable. Discretion of an administrative body must not be used in a discriminatory matter. Administrative action must have a reasonable or rational basis if it is to avoid the stigma of arbitrariness.[7] All governmental bodies must remain within bounds of the Constitution.[8]

A school board may withhold school facilities altogether from use by non-scholastic groups or may make *reasonable* classifications in determining availability.[9] The state may control the use made of its premises but not without regard to the Constitution.[10] The equal protection clause precludes a school from censoring expressions because it does not like its content or message, and it requires a state authority to deal with similarly situated organizations in an even handed manner. The privilege of using a school should be available on a reasonable basis.

A state is under no duty to make school buildings available for public gatherings and a school board is not prevented from barring its use for unlawful purposes. But where a school district allows a number of organizations to use its facilities for non-academic purposes, a board must not unconstitutionally discriminate against any comparable applicant in deciding who will and who will not be permitted its use.[11]

REVERSED.

1. *Cox v. State of Louisiana*, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965).

2. *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

3. *Joyner v. Whiting*, 477 F.2d 456 (4th Cir. 1973); *Friedman v. Union Free School District No. 1 Town of Islip*, 314 F.Supp. 223 (E.D.N.Y.1970); *Cannon v. Towner*, 188 Misc. 955, 70 N.Y.S.2d 303 (1947).

4. *National Socialist White People's Party v. Ringers*, 473 F.2d 1010 (4th Cir. 1973).

5. *Schenck v. United States*, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919).

6. *Stacy v. Williams*, 306 F.Supp. 963 (N.D. Miss.1969).

7. *Atewooftakewa v. Udall*, 277 F.Supp. 464 (W.D.Okl.1967).

8. *Winters v. Governor's Special Committee*, 441 P.2d 370 (Okl.1967).

9. *Ellis v. Dixon*, 349 U.S. 458, 75 S.Ct. 850, 99 L.Ed. 1231 (1955).

10. *Dunkel v. Elkins*, 325 F.Supp. 1235 (D.Md. 1971).

11. *East Meadow Community Concerts Association v. Board of Education of Union Free School District No. 3 County of Nassau*, 18

WILLIAMS, C. J., HODGES, V. C. J., and BERRY, BARNES and SIMMS, JJ., concur.

IRWIN, J., concurs in results.

DAVISON, LAVENDER, JJ., concur specially.

LAVENDER, Justice (concurring specially):

The majority opinion found no evidence in the record showing the appellants, as a PTA, would violate the board's rules, if allowed use of the school facilities. In addition, that opinion found the present board rules to be unconstitutional. I agree. I concur in that result.

This special concurrence would emphasize the board's constitutional control of the use of school facilities by non-scholastic groups "under such regulations and conditions as it may prescribe." § 5–130, supra.

Broad constitutional principles found in the cited authorities of the majority opinion should not be mistakenly taken as destructive of all board control.

In *Cox, supra,* a conviction of a civil rights leader for breach of the peace and obstructing public passages was held unconstitutional as abridging freedom of speech and assembly. The ordinance allowed no parades, yet the city authorities permitted or prohibited them in their completely uncontrolled discretion. After citing twelve of its cases, the United States Supreme Court said:

"From these decisions certain clear principles emerge. The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. The control of travel on the streets is a clear example of governmental responsibility to insure this necessary order. A *restriction* in that relation, *designed to promote the public convenience in the interest of all,* and not susceptible to abuses of discriminatory application, *cannot be disregarded by the attempted exercise of some civil right which, in other circumstances, would be entitled to protection.* (Emphasis added.)

*Grayned, supra,* sets out the constitutional principle of "Free Expression." It then held an anti-noise ordinance, "in light of these general principles," not to be an unconstitutional regulation around a school.

A violation of freedom of the press was found in *Joyner* (4th Cir.), *supra.* There a predominantly black state university's president withdrew financial support from the official student newspaper, which had segregationist editorial policy.

Denial of use of a school auditorium to an unpopular political group was unconstitutional in *National Socialist White People's Party* (4th Cir.), *supra.* This turned on the record not supporting a claimed fear of violence or damage to property, and that permission to use was no acceptance of the users' beliefs. There, groups which had rented the facilities included the Democratic party and the Republican party.

The 1919 case of *Schenck v. United States, supra,* upheld a conviction under the Espionage Act. An attack was made on the act as an infringement of free speech and press. It was held constitutional.

Regulation of guest speakers on the campus of an institution of higher learning was struck down in *Stacy* (N.D.Miss.), *su-*

N.Y.2d 129, 272 N.Y.S.2d 341, 219 N.E.2d 172 (1966); *Buckley v. Meng,* 35 Misc.2d 467, 230 N.Y.S.2d 924 (1962); *American*

*Civil Liberties Union of Virginia, Inc., v. Radford College,* 315 F.Supp. 893 (W.D.Va. 1970).

*pra.* A non-exclusionary attitude must be applied non-discriminatorily. "The interest of both students and Board can, and must, yield to harmonious accommodation under the Constitution."

Judge Eubanks in *Atewooftakewa* (W.D.Okl.), *supra,* held the disapproval of an Indian will by the Secretary of the Interior to be an abuse of discretion. Approval was denied for the decedent had failed to make provision for a daughter born out of wedlock.

This court in *Winters, supra,* confined a statutory investigative governor's committee to the *outer limits* of its legal authority.

*Dunkel* (D.Md.) *supra,* refused to strike down a statute on the ground it would not be construed and applied constitutionally. The statute permitted exclusion from state campuses outsiders "who are acting in a manner disruptive or disturbing to the normal educational functions of the institution." A hearing was required prior to removal though not provided in the statute.

*East Meadow Community Concerts Association* (N.Y.), *supra,* struck down the barring of the use of a school auditorium to a "highly controversial" folk singer, Seeger. The plaintiff association, itself, had heretofore held concerts in the facility. It was this particular program that was barred.

*American Civil Liberties Union of Virginia, Inc. v. Radford College* (W.D.Va.), *supra,* is another campus speaker controversy. In discussing cases involving constitutional challenges to actions of college administrators, the opinion says: "A perusal of these cases makes clear a recurring theme that once a public school *makes an activity available* to its students, faculty, or even the general public, it must operate the *activity* in accord with first amendment principles." (Emphasis added.) There the activity made available was that of guest speakers.

Reasonable classifications in determining availability of school facilities is constitutionally permitted. *Ellis v. Dixon, supra.* Here, this would be within the framework of § 5–130, i. e. youth organizations, civic clubs, religious organizations, political organizations, sports boosters, and education or school boosters. Use of the school facilities for one type of organization or classification, such as Boy Scouts, does not constitutionally require the availability of that facility to a different type or class of organization, such as the Democratic or Republican party.

There is need for balance between broad constitutional principles and the statutory discretionary authority to allow outside organizations to use school facilities under regulations and conditions prescribed by the board. This balance and harmonious accommodation comes through reasonable classifications in determining the extent to which school facilities shall be available for non-scholastic uses.

As suggested in *Ellis, supra,* reasonable classification is implicit in the right to withhold its school facilities altogether. Having allowed one statutorily authorized use, the board is not necessarily and constitutionally required to open its school facilities to all statutorily authorized use. To argue otherwise would deny the board, by rules and regulations, to make reasonable classifications as to non-scholastic users.

I am authorized to state that Justice DAVISON concurs in the views herein expressed.