David **WALTERS**, Appellee,

v.

**OKLAHOMA ETHICS COMMISSION**, Appellant.

No. 67685.

Supreme Court of Oklahoma.

Oct. 27, 1987.

Rehearing Denied Dec. 8, 1987.

Thomas J. Enis, Special Counsel, Oklahoma Ethics Com'n, Oklahoma City, for appellant.

Turner, Turner, Green & Braun, Robert J. Turner and Richard J. Goralewicz, Oklahoma City, for appellee.

HODGES, Justice.

This appeal involves the construction of the provisions of the new Oklahoma Ethics Commission Act, 74 O.S.Supp.1986 §§ 4200–4248.1 (Act). The factual history involved here began with a complaint filed by the General Counsel for the Republican Party, Craig Dodd (Dodd), against David Walters (Walters or appellee), Democratic gubernatorial candidate in the 1986 election, with the Oklahoma Ethics Commission (Commission or appellant) on September 12, 1986, pursuant to the Act. Dodd alleged certain private loans from four individuals in the amount of $162,500 obtained by Walters by giving mortgages on his house were illegal under the Act. Section 4216 of the Act limits a person's or family's contribution to a candidate for state office to $5,000. Section 4202(6) defines "contribution" as "any money, property ... or any other thing of value whatsoever which is given or *loaned* to be used in a campaign...." (emphasis added). Each of the individuals who had loaned money to Walters had already donated the maximum amount.

On September 25, 1986, upon initial review of the complaint the review committee of the Commission referred the complaint to the full Commission for investigation.

After the conclusion of the investigative hearing conducted by the Commission on October 6, 1986, the Commission voted to refer the complaint to the District Attorney of Oklahoma County for action. The complaint filed by Dodd against Walters was the first complaint heard by the Commission under the new Act.

On the morning of October 10, 1986, Walters filed a petition for extraordinary relief in the District Court of Oklahoma County. Walter's petition sought declaratory relief as to the constitutionality of the procedural aspects of the Act and the loan prohibition as applied to him. The district court entered a temporary order that day staying any further action upon the complaint and setting the cause for hearing on October 13th. The Commission was further ordered to appear and show cause why the referral and the complaint should not be dismissed.

Prior to the hearing, the Commission filed an application to assume original jurisdiction and a petition for writ of prohibition in the Supreme Court of Oklahoma. This Court assumed original jurisdiction and entered a writ of prohibition for the limited purpose of prohibiting any proceeding in the cause the object of which is to review the action of the Commission in making a referral of the matter under its investigatory power to a prosecutor.[1]

Trial on the merits was commenced the evening of October 13th. The trial court announced its ruling on October 14th. The trial court found the Oklahoma Administrative Procedures Act (APA) applies to the complaint procedures of the Commission. It ruled Walters had been denied his constitutional rights to procedural due process. It further found § 4207(H) unconstitutionally vague in that it fails to prescribe a

---

**1.** We stated in our Writ of Prohibition issued October 13, 1986, in this matter:

"The decision of the Commission to refer a matter to a prosecutor is non-adjudicative in character, but rather investigatory and non-final in nature and therefore non-reviewable in district court. *Tweedy v. Oklahoma Bar Association,* 624 P.2d 1049, 1052 (Okl., 1981).

"This order does not bar the district court's cognizance over issues now tendered, or to be tendered in that court under the provision of

75 O.S.1981, § 306, [Administrative Procedures Act] or under 12 O.S.1981, § 1651 [Declaratory Judgment Act]. See also: *C.F. Braun & Co. v. Corporation Commission,* 609 P.2d 1268, 1273, 1274 (Okl., 1980).

"An *in camera* inspection of confidential material is authorized only to the extent that it is essential to a determination of the issues properly tendered in the declaratory judgment action."

burden and standard of proof. Section 4207(H) reads:

"In making a determination to dismiss a complaint or to proceed with an investigation or to make a referral to the appropriate authority, the Commission may exercise such discretion as it deems necessary to provide fairness to the accused and to maintain confidence in the public officials and employees who are subject to the provisions of the Oklahoma Ethics Commission Act."

The district court also stated three additional reasons to support its finding the above quoted section of the Act is unconstitutional and Walters was denied due process: 1) there is no provision in the Act nor did the Commission provide a certified shorthand reporter; 2) no findings of fact and conclusions of law were made; and 3) complainant Dodd was allowed to become the prosecutor and legal advisor to the Commission. Lastly, the trial court found the loans to Walters were legal and the interpretation placed on the loans by the Commission is an unconstitutional interpretation in violation of the First Amendment to the United States Constitution. It therefore set aside as null and void the action by the Commission against Walters and enjoined it from any further proceedings against him concerning the loans.

The Commission challenges on appeal the district court's rulings that 1) Section 4207(H) is unconstitutional for vagueness and failure to provide standards, 2) certain procedures followed by the Commission denied Walters procedural due process, and 3) the private loans to Walters to provide funds for his political campaign did not violate the contribution limits in the Act.

I.

The Commission asserts § 4207(H) of the Act is not unconstitutionally vague. The Commission's principal argument is it has only limited investigatory power and does not render any final decision as the ultimate decision to dismiss or prosecute resides with the authority to whom the complaint is referred. An analogy is made to the proceedings before the Council on Judicial Complaints under 20 O.S.1981 § 1652, which has been described as only investigatory in nature, as opposed to being adjudicatory in nature. *Nichols v. Council on Judicial Complaints*, 615 P.2d 280 (Okla. 1980); *In re "Judge Anonymous"*, 590 P.2d 1181 (Okla.1978). It asserts the trial court erroneously imposed adjudicatory standards of due process on the Commission's exercise of investigatory power.

Walters, on the other hand, asserts the Commission conducts proceedings which are judicial in nature and it has been granted unfettered quasi-judicial power which should be struck down, citing *CitiCorp Savings & Trust v. Banking Board of the State of Oklahoma*, 704 P.2d 490, 494 (Okla.1985). He asserts the Commission proceedings are akin to grand jury proceedings and the Commission should be similarly subject to statutory guidelines concerning its powers and duties. The Commission, it is argued, in its decision to refer affected his fundamental right to seek office by politically stigmatizing him. Thus such proceedings should be subject to the traditional adjudicatory procedural safeguards and standards.

We recognize that administrative investigations have been compared to the power granted in grand juries by the courts.[2] However, one significant distinction exists between the Commission and a grand jury. A grand jury not only functions as an inquisitorial body, it is accorded constitutional power to return indictments for all character and grades of crimes. Okla. Const. art. II, § 18; 22 O.S.1981 §§ 331, 333. A criminal prosecution cannot be instituted except by presentment or indictment by a grand jury, or by information filed by the prosecuting attorney. Okla. Const. art. II, § 17. A grand jury's return of a true bill (indictment) is similar to a decision to prosecute. *Tweedy v. Oklahoma Bar Ass'n*, 624 P.2d 1049, 1054 n. 12 (Okla.1981). The Commission, on the other hand, only has power to refer a complaint

---

2. *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 216, 66 S.Ct. 494, 509, 90 L.Ed. 614 (1946); *Winters v. Governor's Special Committee*, 441 P.2d 370, 373 (Okla.1967).

concerning the alleged violation to the appropriate authority who then decides whether or not to prosecute an action, based upon the particular facts revealed from the results of the administrative investigation.[3]

■ Because the Commission possesses only functions of investigation and referral it is merely an investigatory body. *Nelson v. Oklahoma State Ethics Commission,* 551 P.2d 1117 (Okla.1976). Nonadjudicative, fact-finding investigations into possible violations of the Act conducted by the Commission do not constitute an adjudication of legal rights. Therefore, the full panoply of judicial procedures which have traditionally been associated with adjudicatory proceedings under the due process clause is not constitutionally required. *S.E.C. v. Jerry T. O'Brien, Inc.,* 467 U.S. 735, 742, 104 S.Ct. 2720, 2725, 81 L.Ed.2d 615 (1984); *Hannah v. Larche,* 363 U.S. 420, 440–443, 80 S.Ct. 1502, 1513–1515, 4 L.Ed.2d 1307 (1960); *Ewing v. Mytinger & Casselberry,* 339 U.S. 594, 598, 70 S.Ct. 870, 872, 94 L.Ed.2d 1088 (1950). The full requirements of due process do not attach until the adjudicatory stage is begun if and when criminal proceedings are initiated.

■ Inasmuch as the Commission's proceedings are purely investigatory in nature, and as such, the Commission is not authorized to adjudicate rights, the Commission does not fall within the definition of agency under 75 O.S.1981 § 301(1) of the APA. We therefore find the Commission is not subject to the procedures mandated by the APA, except for the provisions relative to the promulgation and filing of its rules and regulations.

■ We do not believe the Commission's grant of discretion is unconstitutionally vague. In ascertaining the constitutionali-

ty of a statute, a legislative act is presumed to be constitutional and will be upheld unless it is clearly, palpably and plainly inconsistent with the Constitution.[4] The Commission is vested by statute with wide discretion; but such discretion is not unconditional. In its exercise of discretion it must act fairly and justly in such a manner which will instill confidence in the proceedings. 74 O.S.Supp.1986 § 4207(H). Furthermore, the Commission, as a governmental body, must remain within the bounds of the Constitution.[5] The broad authority conferred on the Commission is not the equivalent of unbridled freedom to investigate any person merely upon supposition as administrative action must have a reasonable or rational basis and must not be used in an arbitrary and discriminatory manner.[6] We hence hold § 4207(H) is not an unconstitutionally vague grant of power without proper standards or guidelines.

■ Although the Commission is not bound by the full panoply of adjudicatory procedures, the elementary and fundamental principles of fair play dictate that minimum procedural due process safeguards should be observed in the investigative proceedings to avoid unfairness, and even the appearance of unfairness or impropriety, based upon political influence or other improper motives. Whether the due process clause requires that a particular right should obtain in a specific proceeding depends upon a complexity of factors including a consideration of the importance of the interest involved, the nature of the proceeding and the possible burden on that proceeding.[7] The pivotal question remains as to what process is due.

■ After weighing the applicable factors, we conclude that the district court erroneously found the Commission should

---

**3.** *Cf. Falsone v. United States,* 205 F.2d 734, 737 (5th Cir.1953).

**4.** *Reherman v. Oklahoma Water Resources Bd.,* 679 P.2d 1296, 1300 (Okla.1984).

**5.** *Citicorp Sav. & Trust Co. v. Banking Bd.,* 704 P.2d 490, 495 (Okla.1985); *Hennessey v. Independ. Sch. Dist. No. 4, Lincoln Cty.,* 552 P.2d 1141, 1145 (Okla.1976).

**6.** *Id.*

**7.** *Mathews v. Eldridge,* 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Hannah v. Larche,* 363 U.S. at 442, 80 S.Ct. at 1514; *Wood v. Independent School Dist. No. 141,* 661 P.2d 892, 896 (Okla.1983).

make findings of fact and conclusions of law, should establish a burden and standard of proof and the proceedings should be stenographically reported. Our conclusion is based upon "the purely investigative nature of the Commission's proceedings, the burden that the claimed procedures would place upon those proceedings, and the traditional procedure of investigating agencies in general." [8] Although we find a record of the proceedings is not a requirement of due process, nonetheless we find that a record is necessary for a meaningful review by the district attorney or other appropriate authority under the Act for his/her determination as to whether or not to prosecute. We are mindful however that a record would be subject to the confidentiality requirements under § 4207(F) and would not be open for public inspection.

## II.

Having found the Act constitutional we now turn to the question whether Walters was denied procedural due process. Walters points to the asserted flaws in the proceedings against him contending he was denied due process. Because of the absence of statutory guidance and administrative rules, he asserts he was subject to administrative whim. In this regard Walters' specific objections are: (1) no burden and standard of proof; (2) Dodd, the complainant, served as the Commission's prosecutor and legal advisor which, in effect, forced Walters to carry the burden of proving his innocence; and (3) neither findings of fact nor conclusions of law were made.

Walters also complains of the Commission's failure to provide a certified shorthand reporter. He asserts that although the Commission secretary took shorthand notes to record the proceedings, the record remains incomplete despite her good faith attempt.

**8.** *Hannah v. Larche,* 363 U.S. at 451, 80 S.Ct. at 1519.

**9.** *Robbins v. Oklahoma Alcoholic Beverage Con. Bd.,* 461 P.2d 610, 613 (Okla.1969) (case arising under APA).

The Commission contends the district court erred in finding Walters was denied procedural due process because the procedures adopted by the Commission provided for an orderly proceeding consistent with the nature of the investigation, and provided Walters with adequate notice and opportunity to be heard. Again the Commission focuses on the investigatory proceeding as nonadjudicative in character. It asserts the procedures were adequate to provide due process and Walters has not shown he was actually prejudiced from the procedures.

We are persuaded by the Commission's arguments. Walters appeared at the hearing personally and with his attorney, and was given the opportunity to put on testimony and evidence, cross-examine witnesses and present arguments. There was no disagreement as to the facts in connection with the loans. We therefore find Dodd's participation in the hearing did not prejudice Walters. Walters fails to demonstrate the record of the proceeding was legally insufficient to reflect absence of necessary ingredients upon which to base an opinion.[9] Actual prejudice is a necessary element of a due process claim which makes the claim ripe for adjudication.[10] The Commission's failure to provide a court reporter, without more, does not constitute a due process violation. Walters' stipulation to the facts precludes any prejudice from the Commission's failure to make findings of facts, and the same is true of its failure to operate under a standard or burden of proof. There simply were no facts in dispute. Because Walters does not sufficiently establish actual prejudice resulting from the procedures employed, we find Walters was not denied procedural due process.

## III.

The Commission asserts the district court exceeded the review authorized in this

**10.** *United States v. Lovasco,* 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977); *Green v. State,* 713 P.2d 1032 (Okla.Crim.1985).

Court's writ of prohibition in its ruling on the legality of the particular loans in question. Walters counters the loan issue was placed in issue by his petition for declaratory injunctive relief and the ruling constituted a declaration of his rights under the Act. He asserts 12 O.S.1981 § 1651 under the Oklahoma Declaratory Judgments Act permits the district court to construe the loan statute concerning his rights with respect to the Act. While this latter proposition is a correct statement of the law the trial court's review did not comport with this prescription.

We agree with the position urged by the Commission. It contends, and correctly so, the legality of the loans was not an issue properly tendered under a declaratory judgment action. The trial court exceeded its authority in that it only ruled on the loans made to Walters and its ruling was limited to the specific facts of this case. The trial court did not construe the loan prohibition provision or the contribution limitations contained in the Act; rather, it improperly reviewed the action of the Commission to refer. Title 12 O.S.1981 § 1657 provides the Declaratory Judgments Act is inapplicable to "orders, judgments or decrees" of any commission of the State. We recently stated in *Tulsa Tribune Co. v. Okla. Horse Racing Com'n*, 735 P.2d 548, 553 (Okla.1986), it would appear that this provision would also prevent a district court from acting to usurp the authority and responsibility of such commissions to act in the first instance. It would likewise appear § 1657 prohibits review of any action to refer taken by the Commission.

Additionally, the trial court's review of the Commission's action was improper under the Oklahoma Administrative Procedure Act. Title 75 O.S.1981 § 306 of the APA does not permit review on the merits of any action taken by an administrative agency. Section 306 applies to a determination of validity or applicability of an agency rule. Neither was the review authorized under § 318 of the APA as that section only allows judicial review of a "final order" in an "individual proceeding." The determination of the Commission to make a referral was not a final order within the meaning of the APA. The Commission made no final order concerning the validity of the loans in that it did not fix an obligation nor impose any liability on Walters. In and of itself the determination to refer was without binding legal consequence. The determination standing alone is lifeless and is merely a preparatory to further proceedings. If and when the appropriate authority brings charges against Walters for violations of the Act, the issue of the validity of the loans will come to life. *Georator Corp. v. Equal Emp. Opp. Com'n*, 592 F.2d 765 (4th Cir.1979). In addition, the Commission's determination could not be considered a final order because the Commission does not deal with conclusions of law for it has no adjudicative functions. As we have previously observed, the Commission is only authorized to make a determination to refer a complaint to the appropriate authority based on facts revealed in its nonadjudicative, administrative investigations. *Grand River Dam Authority v. State*, 645 P.2d 1011, 1019 (Okla.1982). Therefore, we find the district court's ruling was in excess of its authority.

### CONCLUSION

In summary, we find § 4207(H) constitutional and Walter's vagueness attack on that provision must fail. Our reading of the statute indicates it requires the Commission to conduct its investigative proceedings consistent with the minimal procedural protections of due process under the Federal and State Constitutions. U.S. Const. amend. XIV; Okla. Const. art. II, § 7. We additionally find Walters was fully afforded all procedural due process rights to which he was entitled inasmuch as the facts were undisputed and no actual prejudice was shown. Lastly, we find the legality of the loans in question was not a properly tendered issue in a declaratory judgment action and therefore the trial court's ruling was in excess of its authority.

The judgment of the trial court is reversed. The case is remanded with di-

rections to vacate the injunction and the matter shall proceed in the manner prescribed by the Act.

DOOLIN, C.J., and LAVENDER, SIMMS, OPALA, ALMA WILSON and SUMMERS, JJ., concur.

HARGRAVE, V.C.J., and KAUGER, J., disqualified.

OPALA, Justice, with whom SIMMS, Justice, joins concurring.

David Walters [appellee or Walters], the Democratic Party's nominee for governor in the 1986 general election, came under investigation by the Oklahoma Ethics Commission [Commission] for an alleged breach of the Oklahoma Ethics Commission Act [Act].[1] After hearings the Commission found the evidence sufficient to show a violation of 74 O.S.Supp.1986 §§ 4202(6), 4216 and 4219 of the Act[2] and ordered that a complaint be referred to the district attorney for consideration of criminal charges. Implicit in this referral was the Commission's conclusion that money obtained by a candidate for campaign use through non-bank loans is within the Act's limitations on campaign contributions.[3]

In its opinion today the court holds the Act constitutional. Its pronouncement impresses with specific imprimatur certain investigative procedures prescribed in the Act. Reversed is the trial court's ruling which held the challenged campaign-related, non-bank loans not to be in violation of the Act, because that declaration clearly was unauthorized by §§ 306[4] and 318[5] of the Administrative Procedures Act or by §§ 1651 and 1657[6] of the Uniform Declara-

1. 74 O.S.Supp.1986 §§ 4200 et seq.

2. For the text of 74 O.S.Supp.1986 §§ 4216, 4202(6) and 4219 see footnote 3 *infra*.

3. The terms of 74 O.S.Supp.1986 § 4202(6) are:
"6. *'Contribution' means* and includes *money*, property, or in-kind services, including but not limited to, printing or engraving, radio or television time, billboards, advertising, subscription, forgiveness of indebtedness, personal or professional services or *any other thing* of value whatsoever which is given or *loaned to be used in a campaign,* except for part-time voluntary services performed by the person donating such services;" [Emphasis supplied.]
The terms of 74 O.S.Supp.1986 § 4216 provide:
"No person or family may contribute more than Five Thousand Dollars ($5,000.00) to a political party or organization. No person or family may contribute more than Five Thousand Dollars ($5,000.00) to a candidate for state office, nor more than One Thousand Dollars ($1,000.00) to a candidate for local office. No political party, *organization or candidate shall receive contributions in excess of the amounts provided herein."* [Emphasis supplied.]
The terms of 74 O.S.Supp.1986 § 4219 provide in pertinent part:
"... Nor shall any such corporations, *except a banking corporation* in this state, directly or through such other person, *make any loan of money* or anything of value, or give or furnish any privilege, favor or other thing of value to any political party, or to any representative of a political party, or to any other person for it, or to any candidate upon the ticket of any political party...." [Emphasis added.]

4. The terms of 75 O.S.1981 § 306 provide in pertinent part:

"The *validity or applicability of a rule* may be determined in *an action for declaratory judgment* in the district court of the county of the residence of the person seeking relief or, at the option of such person, in the county wherein the rule is sought to be applied, if it is alleged the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. * * *" [Emphasis added.]
*No rule was tendered to the district court for a declaratory ruling.*

5. The terms of 75 O.S.1981 § 318 provide in pertinent part:
"(1) Any person or party aggrieved or adversely affected by a *final order* in an individual proceeding ... is entitled to certain, speedy, adequate and complete judicial review thereof under this act...." [Emphasis added.]
*The Commission's referral decision was neither final nor adjudicative in character. It was not hence subject to § 318 review.*

6. Section 1651 of the *general* declaratory judgments act, which allows the trial court to determine the construction or validity of any statute, is explicitly *inapplicable* to orders, judgments or decrees of *any state agency or commission.* See the terms of 12 O.S.1981 § 1657 which provide:
"This act shall not be applicable to *orders,* judgments, or decrees *made by* the State Industrial Court, the Corporation Commission, or *any other administrative agency, board or commission* of the State of Oklahoma." [Emphasis supplied.]
*Even if the Commission's referral decision were to be viewed as an adjudicative order rather*

tory Judgments Act. Left unsettled by today's holding is the controversy over the claimed criminal character of Walters' non-bank loans. This was an issue clearly and explicitly removed from the district court's cognizance by this court's order in an original action brought before it by the Commission to arrest *all* further proceedings below.

While I concur in today's judgment and in the court's opinion, I write separately to explain why this court *must*, and wisely does, abstain today from deciding whether Walters' non-bank loans were in violation of the Act.

Because violators of the Act's pertinent provisions are liable to criminal penalties,[7] this court's failure to grant declaratory relief sought by the parties here and below is persuasively rested on three well-established *principles of deference* which must always control orderly interaction of civil remedies with criminal process: (1) in a civil suit for injunctive or declaratory relief, unless it is absolutely clear that a penal statute's construction is *necessary* to protect from irreparable damage a person's rights in property, the decision regarding

criminal liability for one's conduct must always be left to the court with cognizance over the offense charged; (2) the sufficiency of evidence to bring a criminal prosecution may not be challenged, *before* the charge has been brought, in a civil suit for declaratory relief; and (3) declaratory relief is highly inappropriate for testing the legal sufficiency of a charge not yet formally pressed against one who stands as a suspect under government investigation.

## I

## THE COURT OF CRIMINAL APPEALS HAS THE EXCLUSIVE REVIEWING POWER OVER THE MEANING, EFFECT AND VALIDITY OF PENAL ENACTMENTS IMPLICATED IN A CRIMINAL INVESTIGATION OR PROSECUTION

The constitutionality or validity of a penal enactment that is to serve as a foundation for the prosecution ordinarily presents an issue which lies within the *exclusive* cognizance of the court in which the criminal charge is lodged.[8]

than as an investigative report, its terms would lie beyond the reach of reviewing powers granted to a district court. See § 1657 of the Uniform Declaratory Judgments Act in this footnote.

7. The terms of 74 O.S.Supp.1986 § 4221(A) provide:

"Every person who knowingly and willfully violates any of the provisions of Sections 15–103 through 15–111 of this title shall, upon conviction, be guilty of a misdemeanor and shall be punished by the imposition of a fine of not more than One Thousand Dollars ($1,000.00) or by confinement in the county jail for not more than six (6) months, or by both such fine and imprisonment. Prosecutions for such violations shall be prosecuted in the county in which said reports are required to be filed."

8. See *Carder v. Court of Criminal Appeals*, 595 P.2d 416, 419 (Okl.1979); *Anderson v. Trimble*, 519 P.2d 1352, 1354–1355 (Okl.1974) and *Hinkle v. Kenny*, 178 Okl. 210, 62 P.2d 621, 622 (1936). A dual criminal/civil appellate court system similar to Oklahoma's is found in Texas. Texas jurisprudence is most *instructive* here. See discussion in *Anderson v. Trimble, supra;* see also *State v. Stovall*, 168 Tex.Cr.R. 207, 324 S.W.2d 874, 875–876 (1959); *Law v. Texas Delivery Ser-*

*vice, Inc.*, 335 S.W.2d 653, 656 (Tex.Civ.App. 1960); *City of Houston v. Adams*, 326 S.W.2d 627, 630 (Tex.Civ.App.1959); *Stecher v. City of Houston*, 272 S.W.2d 925, 928 (Tex.Civ.App. 1954); *Chevron Oil Company v. City of El Paso*, 537 S.W.2d 472, 474 (Tex.Civ.App.1976); *Better Home Products of Texas Co. v. City of Dallas*, 517 S.W.2d 373, 374 (Tex.Civ.App.1974) and *Malone v. City of Houston*, 278 S.W.2d 204, 205 (Tex.Civ.App.1955). Texas law appears to be settled that equity will not enjoin criminal proceedings or attempt to stay the hands of police officers in enforcing criminal law except where the statute to be enforced is unconstitutional or void *and* its enforcement will result in irreparable injury to vested property rights. The enactment of declaratory judgment legislation did not change the rules that limited equity's power to construe penal statutes.
At the time Texas passed a declaratory judgment act, jurisdiction to determine the validity of penal statutes and ordinances—where irreparable injury to vested property rights was not involved—resided exclusively in the criminal courts. This rule evolved from case law construing pertinent articles of the Texas constitution which provide that courts of record "within their respective jurisdictions" shall have the power to declare rights, status and other legal relations. See *Stecher v. City of Houston, supra.*

## A

Extant Oklahoma case law gives a clear exposition of the dichotomy that governs our civil and criminal appellate cognizance.[9] The Court of Criminal Appeals has the *exclusive* power over matters incident or essential to the complete exercise of its appellate jurisdiction in criminal cases.[10] Because final decisions upon the meaning of a penal enactment may not be made by any appellate tribunal other than the Court of Criminal Appeals,[11] this court's pronouncement on the legality of the loans here in question would be but a forecast with no authoritative guidance either to the trial bench or to the prosecutorial service, the latter of which is the very organ of government required to act on the Commission's referral decision. It would indeed be utterly futile for this court to decide now and here whether an act or omission sought to be ascribed to an individual is in violation of some penal law. Its ruling would have no binding effect on anyone if a criminal prosecution were indeed to follow from the Commission's decision to refer its complaint to a district attorney.[12]

## B

A civil court sitting in equity is not ordinarily concerned with the enforcement of criminal laws; the power to interpret penal provisions is reposed solely in the courts that exercise criminal jurisdiction. Only in those rare circumstances when a void criminal statute impinges vested property rights will a civil court allow its chancery powers to be invoked.[13] Absent these exigent cir-

---

9. Oklahoma jurisprudence is based on judicial construction of Art. 7 § 4, Okl. Const., as well as on similar language in the pre–1967 counterpart version in Art. 7 § 2, Okl. Const. The earlier version of § 2 was repealed by the 1967 amendment of Article 7, Okl. Const. (State Question No. 448, Legislative Referendum No. 164, adopted at election held July 11, 1967).
The terms of Art. 7 § 4, Okl. Const. provide in pertinent part:
"The appellate jurisdiction of the Supreme Court shall be coextensive with the State and shall extend to all cases at law and in equity; *except that the Court of Criminal Appeals shall have exclusive appellate jurisdiction in criminal cases until otherwise provided by statute* and in the event there is any conflict as to jurisdiction, the Supreme Court shall determine which court has jurisdiction and such determination shall be final...." [Emphasis added.]
See *Hinkle v. Kenny, supra* note 8, 62 P.2d at 622; *Anderson v. Trimble, supra* note 8; *Carder v. Court of Criminal Appeals, supra* note 8 and *Corley v. Adair County Court, infra* note 10.

10. See *Hinkle v. Kenny, supra* note 8, 62 P.2d at 622 *where this court reiterated its settled policy to follow the decisions of the Court of Criminal Appeals in matters of criminal law and the construction of criminal statutes.* The stated purpose of this policy is to avoid "a conflict of opinions and decisions between the two courts." See also *State ex rel. Ikard v. Russell,* 33 Okl. 141, 124 P. 1092 (1912); *Ex parte Buchanan,* 113 Okl. 194, 240 P. 699 (1925) and *Ex parte Meek,* 165 Okl. 80, 25 P.2d 54 (1933).
In *Ex parte Meek, supra,* we said:
"Separate courts for the trial of criminal cases and civil cases are common, as are separate appellate courts to entertain appeals in cases falling within these respective divisions. The settled and reasonable policy of the law is that there should be no conflicts in their jurisdictions or in their acts or decisions, where such conflicts are avoidable. The makers of our Constitution had this policy in mind and so indicated that this was their mind by using the term 'exclusive appellate jurisdiction in criminal cases' when they prescribed the jurisdiction to be given to the Criminal Court of Appeals."
The Court of Criminal Appeals in *Corley v. Adair County Court,* 10 Okl.Cr. 104, 134 P. 835, 836 (1913), acknowledged this doctrine, relying upon the principle that two bodies of equal density cannot occupy the same space at the same time.

11. *Ex parte Anderson,* 33 Okl. 216, 124 P. 980, 981 (1912); *Ex parte Meek, supra* note 10; *Hinkle v. Kenney, supra* note 8; see *Ex parte Barnett,* 180 Okl. 208, 69 P.2d 643, 644 (1937); *Corley v. Adair County Court, supra* note 10; and *Hurst v. Pitman,* 90 Okl.Cr. 329, 213 P.2d 877, 882 (1950).

12. *Reed v. Littleton,* 249 A.D. 310, 292 N.Y.Supp. 363, 366 (1936).
The Act's critical provisions—on which the prosecution would be rested—are far from crystal-clear. Walters' legal advisers, the Commission, and the trial judge, each arrived at a somewhat different analysis of the loans' legality. Our own gloss upon this all-important public-law issue would add to criminal jurisprudence but a gratuitous commentary and an exercise in futility.

13. *Whitson v. City of Cherokee,* 173 Okl. 208, 46 P.2d 907, 908 (1935); *Wright v. City of Guthrie,* 150 Okl. 171, 1 P.2d 162, 164 (1931); *Board of Trustees of Town of Canton v. Gunning,* 191 Okl. 448, 130 P.2d 817, 818 (1942) and *State v. Eubanks,* Okl.Cr., 368 P.2d 253, 255 (1962).

cumstances, courts will not in a civil dispute enjoin criminal proceedings, nor will they otherwise act to fetter the hands of government officials attempting to enforce penal laws.[14]

The adoption of the Uniform Declaratory Judgments Act [15]—which authorized the district courts to construe the meaning, or pronounce upon the validity, of a statute— did not change the time-honored rules that traditionally limit the power of equity to construe penal legislation, be it in form of state statutes or municipal ordinances. In *Anderson v. Trimble,*[16] a post-Act decision, we held that the Uniform Act was not intended to license declaratory relief from pending criminal prosecution in any case other than one in which an injunction would have been appropriate under the rules of equity jurisprudence in force anterior to the Act's adoption.

## II

### THE RANGE OF THE DISTRICT COURT'S INQUIRY WAS IMPERMISSIBLY ENLARGED BEYOND

## THE ISSUES AUTHORIZED BY THIS COURT'S ORDER MADE ANTERIOR TO THE TRIAL BELOW IN THE ORIGINAL ACTION FOR A PREROGATIVE WRIT SOUGHT TO ARREST FURTHER DISTRICT COURT PROCEEDINGS

After its investigation and hearing, the Commission found the evidence sufficient to show a violation of §§ 4202(6), 4216 and 4219 of the Act, construed conjunctively, and referred the complaint against Walters to the district attorney for consideration of criminal charges. Before any prosecutorial action took place on the referral, Walters sought declaratory relief in Oklahoma County's District Court. He there challenged the constitutionality of certain procedures prescribed in the Act and of those provisions which operate to restrict non-bank campaign loans to a candidate. The Commission then attempted to prohibit the district court's assumption of cognizance over Walters' challenge by bringing an original action in this court for a prerogative writ.

The writ issued from this forum [17] declared that the district court was without

14. *State v. Eubanks, supra* note 13 at 255; see also *State v. Stovall, supra* note 8 324 S.W.2d at 875–876; *Flowers v. Woodruff,* 150 Tex.Cr.R. 255, 200 S.W.2d 178, 181–182 (1947); *Malone v. City of Houston, supra* note 8 at 205; *City of Houston v. Adams, supra* note 8 at 630; *Chevron Oil Company v. City of El Paso, supra* note 8 at 474; and *City of Amarillo v. Griggs Southwest Mortuary, Inc.,* 406 S.W.2d 230, 232 (Tex.Civ. App.1966).

15. 12 O.S.1981 §§ 1651 et seq.

16. See footnote 8 *supra.*

17. Our October 13, 1986 writ of prohibition directs:

"ORDER

Original jurisdiction is assumed and writ of prohibition issue for the limited purpose of prohibiting any proceeding in Cause No. CJ–86–10855, District Court, Oklahoma County, the object of which is to review the action of the Oklahoma Ethics Commission in making a referral of the matter under its investigatory power to a prosecutor. 74 O.S.Supp.1986, § 4207(G)(2).

The decision of the Commission to refer a matter to a prosecutor is non-adjudicative in character, but rather investigatory and non-final in nature and therefore non-reviewable in

district court. *Tweedy v. Oklahoma Bar Association,* 624 P.2d 1049, 1052 (Okl., 1981).

This order does not bar the district court's cognizance over issues now tendered, or to be tendered in that court under the provisions of 75 O.S.1981, § 306, or under 12 O.S.1981, § 1651. See also: *C.F. Braun & Co. v. Corporation Commission,* 609 P.2d 1268, 1273, 1274 (Okl., 1980).

An *in camera* inspection of confidential material is authorized only to the extent that it is essential to a determination of the issues properly tendered in the declaratory judgment action.

DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE this 13th day of October, 1986.

Robert D. Simms
CHIEF JUSTICE

SIMMS, C.J., LAVENDER, OPALA, WILSON, KAUGER, JJ., CONCUR.
HODGES, J., CONCUR IN PART; DISSENT IN PART.
HARGRAVE, J., DISQUALIFIED
DOOLIN, VCJ, DISSENTS.
HODGES, J., Concurring in Part, Dissenting in Part:

In my opinion the Oklahoma Ethics Commission is not subject to the provisions of the Administrative Procedures Act. Therefore, I

cognizance to review the sufficiency of evidence to support the Commission's referral to the district attorney of the ethics complaint against Walters.[18] Our reason for barring the broad review Walters sought from the district court is plainly apparent. The criminality of a person's conduct may not be challenged in a declaratory judgment suit during the course of a pending law enforcement investigation and *before* prosecution has been instituted.[19] Although explicitly holding that the Commission's decision to refer was nonreviewable by the district court, we did allow the lower court to entertain a judicial inquiry into *those issues which could properly be tendered for* declaratory relief either under 75 O.S.1981 § 306 or 12 O.S.1981 § 1651.

The trial court exceeded its authority when it found that the non-bank loans to Walters were legal and that the Commission's interpretation of the statutory prohibition of loans to candidates contravened the Free Speech Clause of the First Amendment. The trial court took notice of the undisputed facts surrounding Walters' loans and gauged them by its very own view of the applicable law. This was not the function intended for the lower tribunal by this court's order. When the trial court subjected the critical facts examined by the Commission to an independent legal analysis, it was doing *indirectly* that which it was prohibited from doing *directly*. It extended the range of inquiry to include a probe of the *substantive-law foundation* for the Commission's investigation and to invalidate that inquest's product—the referral decision. It is in this oblique manner that the Commission's *nonreviewable investigative action* became the target of an *unauthorized court review* and fell under its axe.

Because both *before* and *after* the referral decision [20] the district court lacked declaratory power over the investigative phase of the Commission's process, its inquiry should have been confined to those purely *procedural features* of the Act which stood before it for constitutional scrutiny. The relief granted Walters below did *not* avail to him during the Commission's investigation, during the district attorney's consideration of the Commission's referral decision, nor at any other point in time during the *pre-charge stage* of the process.[21] The range of issues litigable below was impermissibly enlarged beyond the course charted by this court's order in the original action brought here by the Commission to arrest all further proceedings for the relief Walters sought in his district court suit.[22]

would limit the trial court's inquiry solely to constitutional issues.

I concur in paragraphs (1), (2) and (4) of the Court's order, and concur in part and dissent in part to paragraph (3)."

**18.** The referral decision was nonreviewable because the Commission lacks adjudicative power. Its function is to investigate and, if warranted, to refer the complaint for prosecution to a district attorney. The referral is neither an adjudication nor a rule. See 75 O.S.Supp.1985 § 301(2) and (6) for definitions of "rule" and "order"; see also *Grand River Dam Authority v. State,* 645 P.2d 1011, 1019 (Okl.1982).

**19.** The sufficiency of the government's case cannot ordinarily be tested by a declaratory judgment in advance of prosecution. *Zemel v. Rusk,* 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965). In *Zemel,* the Court, while stating the general rule that equity will not interfere with the criminal process by entertaining actions for injunction or declaratory relief in advance of criminal prosecution, did note certain circumstances under which courts are allowed to make an exception to this rule. *None of these exceptions is applicable to this case.*

**20.** In essence and in its legal effect the Commission's referral decision was not one iota different from a police chief's directive to carry a crime investigation report to the local prosecutor for further handling and action, if one were indeed legally appropriate.

**21.** The law discourages piecemeal litigation of the legal issues in multiple suits and seeks to prevent the needless proliferation of litigation. If multiplicity of suits were to be allowed, an unnecessary burden would be cast on the courts and law enforcement authorities. See *Norcisa v. Board of Selectmen of Provincetown,* 368 Mass. 161, 330 N.E.2d 830, 834 (1975).

**22.** See *State ex rel. Smith v. District Court of Osage County,* 188 Okl. 663, 112 P.2d 381, 382 (1941) and *Parks v. Hughes,* 312 P.2d 435, 437 (Okl.1957).

I fully join the court's holding today that Walters' district court exoneration poses *no* legal impediment to testing the legality of his campaign-related non-bank loans in a proceeding brought to enforce the Act's penalties.